DAIRY DISTRIBUTORS, INC.,
Appellant,

v.

WESTERN CONFERENCE OF TEAM-
STERS, Appellee.

No. 6629.

United States Court of Appeals
Tenth Circuit.

Aug. 22, 1961.

Rehearing Denied Oct. 3, 1961.

Arthur A. Allen, Jr., Salt Lake City, Utah (Hanson, Baldwin & Allen, Salt Lake City, Utah, were with him on the brief), for appellant.

Elias Hansen, Salt Lake City, Utah (Clarence M. Beck and A. Park Smoot, Salt Lake City, Utah, were with him on the brief), for appellee.

Douglas McHendrie, Denver, Colo. (John F. Mueller and Grant, Shafroth, Toll & McHendrie, Denver, Colo., were with him on the brief), for amici curiae.

Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This appeal is taken from a decree of the District Court for the District of Utah which perpetually enjoined Dairy Distributors, Inc. from enforcing a judgment for $100,000 obtained against the Western Conference of Teamsters in the state courts of Utah. Appellant's basic contention of error is that the United States District Court has but relitigated issues fully determined in the state court action and has premised the injunction upon findings of fact and conclusions of law that are in simple disagreement with the findings and conclusions of the state court. The United States District Court, so says appellant, has undertaken to sit in appellate review upon a state court case after that case has been set at final rest by the Supreme Court of Utah. Appellee defends the issuance of the injunction upon the ground that the federal district court has correctly found that the state court judgment was without jurisdictional foundation of either person or subject matter and upon issues involving a federal question. We will hereafter re-

fer to appellant here and plaintiff in the state court action as the Company and appellee here and defendant in state court as Western Conference.

The factual background of the controversy as it developed and reached the state courts of Utah is fully set forth in the opinion of the Supreme Court of Utah. See Dairy Distributors v. Local Union 976, 8 Utah 2d 124, 329 P.2d 414, certiorari denied 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1259. In brief, the action was brought by the Company to recover for damages occasioned by Local Union 976, Joint Council 67, Western Conference, The International Brotherhood of Teamsters, and others, through conduct prohibited by 29 U.S.C.A. § 187 (Sec. 303, Labor Management Relations Act, 61 Stat. 158).[1] Jurisdiction of such a cause of action is granted to state courts having jurisdiction of the parties by Sec. 303(b) of the Act. Jurisdiction also specifically lies in the district court of the United States.

Among the defenses advanced by Western Conference in the state court action were the claims that service of process was invalid and that the state court lacked jurisdiction of the subject matter as it applied to Western Conference. Specifically, Western Conference contended that it was not a labor organization as that term is included in the provisions of the Labor Management Act.[2] Both issues were decided adversely to Western Conference in the state trial court and presented to the Utah Supreme Court on appeal. That high court held, 329 P.2d 414 at page 419:

"Defendant's Point II contends that the Western Conference of Teamsters is exempt from this litigation, not being a labor organization within the contemplation of Title 29, Sec. 152(5) U.S.C.A. There is evidence in the record to indicate that Western Conference of Teamsters had jurisdiction over local teamster unions in the 11 western states; that Local 976, of which Rash was an officer, was affiliated with the Western Conference, and that it in turn was affiliated with the International Union. Under such circumstances we cannot say that the Western Conference of Teamsters was not a labor organization under the broad definition of the act."

But both issues were found by the United States District Court in favor of Western Conference as follows:

"IV. The purported service of process upon Western Conference of Teamsters in the aforementioned state court case was had upon one Joseph Ballew. The court finds that at the time the said Joseph Ballew was so served he was a stranger to

1. 29 U.S.C.A. § 187.
"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—
"(1) forcing or requiring any employer or self-employed person to join any labor or employer organization or any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer,

processor, or manufacturer, or to cease doing business with any other person;
"(2) forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; * * *".

2. Sec. 2(5), 29 U.S.C.A. § 152(5).
"The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Western Conference of Teamsters in that he was not an employee, officer, general agent or other agent of the plaintiff herein nor had he ever been, nor was he at that time or ever authorized by appointment nor by law to receive service for or in behalf of the plaintiff herein. Plaintiff Western Conference of Teamsters, during all times mentioned in the state court action, had no property in the State of Utah, neither did it have, nor did it hold itself out as having, an office or place of business in the State of Utah, nor did it do any business in the State of Utah."

"VII. The court finds that plaintiff, Western Conference of Teamsters, is not and never has been an organization in which employees participate respecting hours or conditions of work and labor or an organization in which employees are eligible to membership or affiliation, within the meaning of the 'Labor Management Relations Act, 1947.' "

 The grant of jurisdiction to state courts to try and decide certain issues arising under the Labor Management Act carries with it the inherent power to interpret the Act and to decide factual matters necessary for the proper and lawful administration of the Act. The grant of such jurisdiction to state courts and the similar grant to the United States District Court does not contemplate a dual remedy or a dry run in either court. It does contemplate a finality of determination in either jurisdiction of every proper issue presented. The rule is not altered nor weakened by the event that the issue may reach the field of jurisdiction when that subject is dependent upon fact affecting person or subject matter. The issue of jurisdiction must reach finality the same as any other issue. Lewis v. Carver, 10 Cir., 237 F.2d 516; American Surety of New York v. Baldwin, 287 U.S. 156, 53 S. Ct. 98, 77 L.Ed. 231; Treinies v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85. Here, Western Conference entered the state court to litigate the issue, among others, of the validity of the service of process upon one Ballew (or Ballou) as an agent of Western Conference. The state trial court, upon consideration of evidence which is neither before us nor was before the United States District Court, determined Ballew to be an agent of Western Conference and accordingly found a valid service of process upon Western Conference. This judgment was affirmed against direct attack in the Supreme Court of Utah. Had this issue originated in the United States District Court our present review would have concerned the evidence viewed by the federal trial court as demonstrating that no such agency existed. But we make no such review. On a similar contest of jurisdiction, the United States Supreme Court has held:

"The substantial matter for determination is whether the judgment amounts to *res judicata* on the question of the jurisdiction of the court which rendered it over the person of the respondent. It is of no moment that the appearance was a special one expressly saving any submission to such jurisdiction. * * * The special appearance gives point to the fact that the respondent entered the Missouri court for the very purpose of litigating the question of jurisdiction over its person. It had the election not to appear at all. If, in the absence of appearance, the court had proceeded to judgment, and the present suit had been brought thereon, respondent could have raised and tried out the issue in the present action, because it would never have had its day in court with respect to jurisdiction * * * It had also the right to appeal from the decision of the Missouri District Court, * * * It elected to follow neither of those courses, but, after having been defeated upon full hearing in its contention as to jurisdiction, it took no further steps, and the judgment in question resulted." Baldwin v. Iowa State Traveling Men's Association,

283 U.S. 522 at page 524, 51 S.Ct. 517, 75 L.Ed. 1244.

We think it clear that the determination of the Utah court that it had jurisdiction over the person of Western Conference through the service of process upon one found to be an agent of Western Conference is res judicata of that issue. The necessity of examining the question of agency is often the pivotal point in determining jurisdiction of either person or subject matter and can and does form the premise of the doctrine of res judicata as between state and federal courts. In McCarthy v. State, et al., 1 Utah 2d 205, 265 P.2d 387, 389, 49 A.L.R. 2d 1031, the Supreme Court of Utah applied the principle of finality of judgment where the federal court had earlier considered the claim of agency of state officers acting under the compulsion of a state statute. The federal court had dismissed the action because the named individual defendants were not the real parties in interest. Such ruling required a determination of agency and an interpretation of a state statute. The action was then filed in the state court and was dismissed as being res judicata. In affirming this dismissal the Utah Court stated:

> "The issue was settled by the Federal Court, as hereinabove indicated, and it was not the prerogative of the State District Court nor of this Court on appeal to review or reverse that decision. Whether its judgment was right or wrong, it stands unassailed and is binding upon the parties. Any other view would create uncertainty by undermining the conclusive character of judgments and would permit the revival of litigation once terminated; consequences which it was the very purpose of the doctrine of res judicata to avoid."

Western Conference strenuously urges that it is not a labor organization within the bounds of that term as defined in the Labor-Management Act and that a determination to the contrary in a state court cannot be res judicata upon such an issue. The ruling does, of course, require a determination and application of fact to an interpretation of Sec. 2(5) of the Act and the correctness of such rulings is of utmost importance in the administration of the Act. But adequate protection against the frustration of federal law by unsound interpretation or application in state courts lies in the power of the Supreme Court of the United States to review by certiorari the judgments of state supreme courts upon matters of federal or constitutional law. In Norris v. State of Alabama, 294 U.S. 587, 55 S. Ct. 579, 580, 79 L.Ed. 1074, the power and duty is recognized by Mr. Justice Hughes thus:

> "That the question is one of fact does not relieve us of the duty to determine whether in truth a federal right has been denied. When a federal right has been specially set up and claimed in a state court, it is our province to inquire not merely whether it was denied in express terms but also whether it was denied in substance and effect. If this requires an examination of evidence, that examination must be made. Otherwise, review by this Court would fail of its purpose in safeguarding constitutional rights. Thus, whenever a conclusion of law of a state court as to a federal right and findings of fact are so intermingled that the latter control the former, it is incumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured."

In the instant case certiorari was sought and denied by the Supreme Court of the United States from the judgment of the Supreme Court of Utah. Such denial does not establish the correctness of the particular judgment but serves only to establish the finality of the judgment as between the particular parties. The same issue cannot be renewed by initiation of an action in the United States District Court.

Amici Curiae join Western Conference in arguing that it has now been admitted that the appellant company held

no certificate of public convenience and necessity required by the Interstate Commerce Commission as a condition to doing business as an interstate contract carrier;[3] that the evidence demonstrates that the appellant was operating an interstate trucking business without authority; and that for these reasons appellant should be denied enforcement of its judgment.

The Interstate Commerce Act does not provide for court action for violation of the provisions of that act, but does provide, 49 U.S.C.A. § 13(1):

"(1) Any person, firm, corporation, company or association, or any mercantile, agricultural, or manufacturing society or other organization, or any body politic or municipal organization, or any common carrier complaining of anything done or omitted to be done by any common carrier subject to the provisions of this chapter in controvention of the provisions thereof, may apply to said Commission by petition, which shall briefly state the facts; whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint, or to answer the same in writing, within a reasonable time, to be specified by the Commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been done, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified, or there shall appear to be any reasonable ground for investigating said complaint, it shall be the duty of the Commission to investigate

the matters complained of in such manner and by such means as it shall deem proper."

and, 49 U.S.C.A. § 12(1):

"(1) The Commission shall have authority, in order to perform the duties and carry out the objects for which it was created, to inquire into and report on the management of the business of all common carriers subject to the provisions of this chapter, * * * The Commission is authorized and required to execute and enforce the provisions of this chapter; and, upon the request of the Commission, it shall be the duty of any United States attorney to whom the Commission may apply to institute in the proper court * * * all necessary proceedings for the enforcement of the provisions of this chapter and for the punishment of all violations thereof * * *"

It is clear that the matters of interstate transportation of goods were entrusted to the Commission by Congress and the role of the courts in the administration of the policies is limited to enforcing, enjoining, setting aside, annulling or suspending orders of that body, 28 U.S.C.A. § 1336, 28 U.S.C.A. § 2321, 49 U.S.C.A. § 16. The record here indicates that the Commission has licensed the appellant as a private carrier; no complaint of this action has been made to the Commission; and if damage arose as a result of improper licensing or improper use of the granted certificate, it is not apparent.

Appellee has not cited us to a case where such a defense was interposed in a court action sounding in tort, nor do we think such defense proper. The commission has the facilities and powers to investigate all such matters and is charged with the responsibility of administering the Act in all its facets. The

---

3. The opinion of the Supreme Court of Utah may indicate that that Court considered this point upon an erroneous assumption of fact. 329 P.2d 414 at page 420. If so, the proper remedy lay in urging the Utah Court to correct such error.

We consider the contention only because from the record before us and the opinion of the Supreme Court of Utah we cannot clearly determine whether the Utah court considered and acted upon the issue.

courts may not usurp its power in the guise of determination of a civil suit.

■ Finally, Western Conference contends that it was deprived of the opportunity of defending, in full, the state court action because of extrinsic fraud perpetrated by the Company. This contention was presented to the state trial court by post-trial motion and was there rejected. It was also presented to the United States District Court and was similarly rejected. Fraud is within the doctrine of res judicata, Heiser v. Woodruff, 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970, and can serve as a premise to avoid a state court judgment only when it is presented to a federal court as an original issue. Here, even as an original issue, the claim was found to lack merit by the court below. We find no error in the finding.

Reversed and remanded with directions to vacate the injunction.