505 P.2d 313 (1973)
95 Idaho 165
Ross SIMPKINS and Robert Scheuffele, dba R & R Carpet Service, a partnership, Plaintiffs-Appellants,
v.
SOUTHWESTERN IDAHO PAINTERS DISTRICT COUNCIL NO. 57 and Thomas F. Payne, Business Manager of Southwestern Idaho Painters District Council No. 27, Defendants-Respondents.
No. 10738.
Supreme Court of Idaho.
January 2, 1973.
Rehearing Denied February 1, 1973.
*314 Eli A. Weston, Weston & Weston, Boise, for plaintiffs-appellants.
Wayne P. Fuller, Brauner, Fuller & Doolittle, Caldwell, for defendants-respondents.
McQUADE, Chief Justice.
This appeal requires us to examine the uncertain jurisdictional relationship between state courts and the National Labor Relations Board, in the context of an action for damages and injunctive relief from organizational picketing. To provide a framework for analyzing the jurisdictional issues, it is important to review current developments in the law of federal preemption.

I
The National Labor Relations Act,[1] as amended,[2] represents an effort by Congress to establish a uniform labor policy implemented by an expert administrative body. Sections 7 and 8 of the Act[3] seek to accommodate the competing interests of employers, employees, labor organizations and the public, by striking a balance among certain protected and prohibited activities.[4] Three landmark Supreme Court decisions secure the federal statutory scheme from intrusion by the states. In San Diego Building Trades Council v. *315 Garmon,[5] Justice Frankfurter articulated a broad rule protecting the primary jurisdiction of the National Labor Relations Board:[6]
"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."
In Garner v. Teamsters Local 776,[7] the Court insulated §§ 7 and 8 from state attempts to expand or contract the substantive rights created by Congress. The Court held that a state is barred not only from applying local law in conflict with the federal statute,[8] but also from providing supplementary remedies for violations of federal law pending Board action.[9] Speaking through Justice Jackson the Court further indicated that the states might also be preempted from regulating activities not explicitly identified as protected or prohibited:[10]
"For a state to impinge on the area of labor combat designed to be [left unregulated] is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits."
The Court made this dictum a holding in Teamsters Local 20 v. Morton,[11] where it disallowed a state award of damages to an employer for union appeals to customers or suppliers  in violation of state common law but not of the federal Act  to discontinue doing business with the employer. The union conduct was shielded from state regulation on the theory that Congress intended activities not governed by federal legislation to be "free."[12]
However, the doctrine of federal preemption does not displace state jurisdiction over matters "peripheral" to the regulation of labor relations or "deeply rooted in local feeling and responsibility."[13] Disputes *316 between a union and its members are said to exemplify the former,[14] while violent or threatening conduct[15] and mass picketing[16] commonly illustrate the latter. The Supreme Court has also recognized state jurisdiction over actions to enforce collective bargaining agreements,[17] or for injunctive relief and damages from malicious libel,[18] even though the conduct in question arguably is subject to the federal Act. Congress has further provided concurrent state jurisdiction over certain types of union unfair labor practices, through § 303 of the Labor Management Relations Act.[19] Unless a case clearly falls within one of these exceptions, the Garmon rule of primary jurisdiction and Garner-Morton rules of substantive federal preemption are controlling. The jurisdictional issue raised by the facts of the case at bar must be analyzed within this framework.

II
From the record it appears that appellants Simpkins and Scheuffele are partners in the carpet installation business. In 1968 they were engaged by Mrs. Lucille Taylor, an interior decorator, to lay carpet as part of a remodeling project at the Thunderbird Motel in Boise. Mr. Rex Barton, the motel manager who hired the services of Mrs. Taylor, previously had reached an oral agreement with District Council No. 57, a labor organization representing members of Local 477 of the respondent union for the purpose of collective bargaining, that union craftsmen would be employed on the remodeling project. When the appellants, who are not members of any union, began work at the motel, Mr. Thomas Payne, business representative for District Council No. 57, warned Mr. Barton and Mrs. Taylor that the project would be picketed. The following day a single picket peacefully patrolled the public sidewalk and driveway in front of the motel, carrying a sign which declared that the carpet layers on the jobsite were not parties to a prior floor covering agreement between District Council No. 57 and the motel management. Although a rear entrance to the motel was not picketed, and despite the reported absence of any threats or coercion, the union employees of other contractors on the project refused to enter the jobsite while the picket was posted. Apparently in response to pressure from Barton, Mrs. Taylor terminated the contract with appellants on the motel project.
Simpkins and Scheuffele promptly filed an action in the district court against Local 477, the International Union, Payne and others who may have participated in the picketing. In an amended complaint, *317 appellants retained the named parties but added District Council No. 57 and Mr. Kenneth Stevenson, recording secretary and representative of the local and international unions, as parties defendant. The amended complaint prayed for compensatory and punitive damages on grounds that the picketing violated state and federal law, and that it unlawfully interfered with appellants' contractual relationship with Mrs. Taylor. Appellants also sought injunctive relief, but the apparent termination of picketing upon their departure, and subsequent completion of the remodeling project, have mooted that issue.
In the district court, the defendants moved to dismiss Kenneth Stevenson, Local 477 and the International Union as defendants because they had not authorized or participated in the picketing. Prior to judgment the court granted these motions, and no timely appeals were brought from the orders of dismissal.[20] The remaining defendants, who are the respondents on appeal, moved dismissal of the entire complaint on the ground that exclusive jurisdiction over the subject matter rested in the National Labor Relations Board. After taking the motion under advisement and hearing the evidence without a jury, the district court ruled that the picketing arguably was covered by § 7 or § 8 of the National Labor Relations Act, bringing the case within the scope of Garmon and compelling a judgment of dismissal for lack of primary jurisdiction in the state court. On appeal from that judgment, appellants have assigned error to the court's finding that the picketing arguably was subject to § 7 or § 8 of the federal act, and to the court's failure to make findings on the alleged violations of state law.

III
Although appellants challenge the district court's finding that the activity in question arguably was governed by § 7 or § 8, they have made no attempt to demonstrate from an examination of the facts that the case clearly falls beyond the reach of those provisions. To the contrary, it would appear from the record that the district court properly identified the picketing as arguably subject to § 8(b)(4)[21] and *318 other provisions of § 8. On this basis the Garmon rule would require that the state court defer to the primary jurisdiction of the National Labor Relations Board. However, appellants seek to escape the grasp of Garmon by arguing that they are not "employees" as contemplated by the National Labor Relations Act; but that they are, as the district court found, independent contractors.[22] The record appears to indicate that appellants operate their own business for profit, contract with several firms, supply their own tools, and customarily receive payment according to the yardage of carpet laid. Persons who contract for their services do not make the standard deductions for social security or withholding of income tax; nor do they make contributions for workmen's compensation insurance. On the job in question it appears that Mrs. Taylor specified the carpet to be laid and the trim to be used, but did not supervise the details of installation. In light of these factors the district court's finding, that appellants are independent contractors, is consistent with prior state decisions.[23] Moreover, because the tests for ascertaining status as employees or independent contractors derive from the common law,[24] this determination requires no special administrative expertise that the district court did not possess.[25] Consequently, for purposes of this appeal, we assume appellants' status as independent contractors to be fixed.
Designation of appellants as independent contractors may strip them of certain protections which the National Labor Relations Act extends particularly to "employees."[26] Nevertheless, § 303 of the Labor Management Relations Act[27] grants the right to an action for damages, in any court having jurisdiction of the parties, to anyone injured in his person or property by union activities prohibited by § *319 8(b)(4).[28] Section 303 embodies a "clear exception to the exclusive jurisdiction of the NLRB",[29] and grants the state courts primary jurisdiction concurrent with federal courts to decide suits for damages when the cause of action is grounded in § 8(b)(4).[30] In the case at bar, appellants' amended complaint alleged violation of federal law, and the district court noted the probable application of § 8(b)(4); but no findings concerning actual violation were made. On appeal the respondents contend that appellants framed the issues at trial around the alleged violations of state law. In any event, the critical question whether the union picketing represented secondary activity proscribed by § 8(b)(4), or primary activity exempted from the scope of unfair labor practices, has not been resolved on the facts. The district court should be afforded an opportunity to make appropriate findings, after receiving further evidence if necessary, on remand.[31]

IV
Appellants' attempt to color the case with state law raises the issue of substantive preemption governed by the general rules of Garner and Morton, supra. Specifically, we are required to decide whether the Idaho Antitrust Law,[32] and I.C. § 44-712[33]  which narrowly defines the labor disputes that underlie the right to engage in peaceful picketing, constitute valid bases for assertion of state jurisdiction.
The antitrust statutes are utilized in this case apparently as weapons to attack the oral agreement, between the Thunderbird Motel management and District Council No. 57, to employ union craftsmen on the remodeling project. Whether this agreement, which the picketing reportedly was designed to protect, *320 rose to the dignity of a collective bargaining agreement is a question not addressed by the district court. But as a general principle, the Supreme Court has barred intrusion of state antitrust law into the collective bargaining process when it incidentally purports to modify rights and duties established by federal law.[34] "Controlling and therefore superseding federal power cannot be curtailed by the State even though the ground of intervention be different than that on which federal supremacy has been exercised."[35] The antitrust statutes raise no justiciable issue of state law when applied to the present case.
The role played by I.C. § 44-712 in appellants' attack against the union picketing is rather obscure. To the extent that it relates to the right to injunctive relief, it addresses a moot question. Neither can it be construed, in light of Garner-Morton, to supplement appellants' alleged right to damages under federal § 8(b)(4). Moreover, insofar as the statute is invoked to establish that the picketing was unlawful, in order to support an action in tort for contractual interference,[36] its application would conflict with Supreme Court interpretations of the First Amendment. In American Federation of Labor v. Swing[37] the Court, employing the pointed language of Justice Frankfurter, articulated a holding thoroughly dispositive of the point:[38]
"A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. * * * The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ."
The state laws asserted by appellants provide no basis for recovery against respondents. *321 The only viable issue to emerge from this appeal is whether the picketing was a primary or secondary activity under § 8(b)(4). The decision of the district court is reversed and remanded for findings on this question. Costs to appellants.
McFADDEN, DONALDSON and SHEPARD, JJ., concur.
BAKES, Justice (concurring specially).
I concur in the result reached by the majority in this case. Section 303[1] of the Labor Management Relations Act does grant to plaintiffs in this action a cause of action for damages as a result of union activities prohibited by Section 8(b)(4).[2] As the opinion of Justice McQuade correctly points out, Section 303 embodies a clear exception to what would otherwise be the exclusive jurisdiction of the National Labor Relations Board in situations where the Garner-Morton cases[3] would otherwise apply. The district court should have assumed jurisdiction and decided the case.
NOTES
[1] 49 Stat. 449, 29 U.S.C. § 141 et seq. (1970).
[2] See the Labor Management Relations Act, 61 Stat. 136, 29 U.S.C. §§ 141-144, 151-167, 171-187 (1970); cf. the Labor Management Reporting and Disclosure Act, 73 Stat. 519, 29 U.S.C. §§ 141, 153, 158-160, 164, 187 (1970).
[3] 29 U.S.C. §§ 157, 158.
[4] For lucid and informed analyses of the Congressional intent, see e.g., Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337 (1972); Come, Federal Preemption of Labor-Management Relations: Current Problems in the Application of Garmon, 56 Va.L.Rev. 1435 (1970).
[5] 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).
[6] 359 U.S. at 245, 79 S.Ct. at 780. Accord, e.g., International Longshoremen's Local No. 1416, AFL-CIO v. Ariadne Shipping Co., 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970); Cox's Food Center, Inc. v. Retail Clerks Union, Local No. 1653, 91 Idaho 274, 420 P.2d 645 (1966).
[7] 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).
[8] Cf. Elec. Ry. & Motor Coach Employees of America v. Wisconsin Labor Relations Bd., 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364 (1951); Hill v. State of Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945).
[9] See also Building Trades Council v. Kinard Construction Co., 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423 (1954), reversing per curiam 258 Ala. 500, 64 So.2d 400 (1953).
[10] 346 U.S. at 500, 74 S.Ct. at 171. Compare the contrary earlier views expressed by Justice Jackson on intermittent work stoppages, in International Union, U.A.W., A.F. of L. v. Wisconsin Employment Bd., 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949), and by Justice Frankfurter on maintenance-of-membership agreements, in Algoma Plywood & Veneer Co. v. Wisconsin Labor Relations Bd., 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691 (1949).
[11] 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).
[12] See also International Union, U.A.W. v. O'Brien, 339 U.S. 454, 70 S.Ct. 781, 94 L.Ed. 978 (1950). Compare Hanna Mining Co. v. District 2, Marine Engineers Beneficial Ass'n, 382 U.S. 181, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965), holding that if the National Labor Relations Board declines jurisdiction over the parties, then the states may afford remedies under state law even though the conduct in question arguably is subject to the substantive provisions of the federal Act. For an earlier decision apparently inconsistent with Morton, see International Union, UAW v. Wisconsin Employment Relations Bd., 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651 (1949).
[13] San Diego Building Trades Council v. Garmon, supra note 5, 359 U.S. at 244, 79 S.Ct. at 779.
[14] International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958). But see Amalgamated Ass'n of Street Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), holding such a dispute to fall within the Garmon rule, and reversing 93 Idaho 294, 460 P.2d 719 (1969).
[15] E.g., UMW v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); International Union, United Automobile, etc. Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); UAW v. Wisconsin Employment Relations Bd., 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956); United Constr. Workers v. Laburnum Const. Co., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). Cf. Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941).
[16] Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Bd., 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942).
[17] Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); Charles Dowd Box v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).
[18] Linn v. United Plan Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).
[19] 29 U.S.C. § 187(b) (1970). Applicability of this section to the present case is discussed infra.
[20] Appellants have assigned error, as part of this appeal, to the orders of dismissal; but the assignment cannot be reviewed. The order to dismiss the International Union was entered on April 22, 1969, while the order dismissing Kenneth Stevenson and Local 477 was entered on January 21, 1970. The notice of this appeal was filed on June 30, 1970, after the 60-day deadline prescribed by I.C. § 13-201 had expired with respect to both orders. I.C. § 13-201(1) provides in pertinent part: "An appeal may be taken to the Supreme Court from a district court. 1. From a final judgment in an action or special proceeding commenced in a district court * * * within sixty days after the entry of such judgment * * *."
[21] 29 U.S.C. § 158(b) provides in pertinent part: "It shall be an unfair labor practice for a labor organization or its agents * * * (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is  (A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section; (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]"
[22] 29 U.S.C. § 152(3) provides, in pertinent part: "The term `employee' shall include any employee, * * * but shall not include * * * any individual having the status of an independent contractor[.]"
[23] See, e.g., Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960): Ohm v. J.R. Simplot Co., 70 Idaho 318, 216 P.2d 952 (1950); Laub v. Meyer, 70 Idaho 224, 214 P.2d 884 (1950). But compare Carpet, Linoleum, etc., Local 419, 176 N.L.R.B. 876 (No. 120, 1969) with Carpenters Local 2265, 170 N.L.R.B. 633 (No. 93, 1968), for contrasting analyses by the NLRB of the independent contractor issue and its effect on the question of whether picketing was primary or secondary activity.
[24] E.g., Carnation Co. v. N.L.R.B., 429 F.2d 1130 (9th Cir.1970); Steel City Transport, Inc. v. N.L.R.B., 389 F.2d 735 (3d Cir.1968).
[25] N.L.R.B. v. United Insurance Co. of America, 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); see also N.L.R.B. v. Brush-Moore Newspapers, Inc., 413 F.2d 809 (6th Cir.1969), cert. denied, 396 U.S. 1002, 90 S.Ct. 555, 24 L.Ed.2d 495 (1970). Compare Marine Engineers Beneficial Ass'n v. Interlake Steamship Co., 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962), where the Supreme Court declared that "the process of defining the term `labor organization' is one which may often require the full range of [National Labor Relations] Board competence." 370 U.S. at 178, 82 S.Ct. at 1240.
[26] Compare, e.g. Crow Gravel Co., 168 NLRB 1040 (No. 141, 1967) and Maxwell Co., 164 NLRB 713 (No. 97, 1967) with Reno Musicians Local 378, 170 NLRB 271 (No. 56, 1968).
[27] Section 303 is codified as 29 U.S.C. § 187 (1970), and provides: "(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title.

(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit. June 23, 1947, c. 120, Title III, § 303, 61 Stat. 158; Sept. 14, 1959, Pub.L. 86-257, Title VII, § 704(e), 73 Stat. 545."
[28] See, e.g., Mason-Rust v. Laborers Local 42, Laborers Intern. Union of North America, AFL-CIO, 306 F. Supp. 934 (E.D.Mo. 1969); aff'd, 435 F.2d 939 (8th Cir.1970).
[29] Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Union, 359 F.2d 598 (2d Cir.1966), cert. denied, 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966).
[30] E.g., Dairy Distributors, Inc. v. Western Conference of Teamsters, 294 F.2d 348 (10th Cir.1961); cert. denied, 368 U.S. 988, 82 S.Ct. 604, 7 L.Ed.2d 525 (1962); Int'l. Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952). See Sovern, Section 301 and the Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529, 549-550 (1963). Compare Weber v. Anheuser-Busch, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546 (1955) on state jurisdiction to provide injunctive relief.
[31] The findings with respect to § 8(b) (4) should also put to rest allegations made under the Idaho Secondary Boycott Act, I.C. § 44-801 et seq., to the extent that it remains applicable to this case in light of Pocatello Bldg. & Constr. Trades Council v. C.H. Elle Constr. Co., 352 U.S. 884, 77 S.Ct. 130, 1 L.Ed.2d 82 (1956), reversing 78 Idaho 1, 297 P.2d 519 (1956).
[32] I.C. § 48-101 provides, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal."

I.C. § 48-104 provides: "Every person, corporation, joint stock company, or other association engaged in business within this state, who shall enter into any contract, combination or conspiracy, or who shall give any direction or authority to do any act, for the purpose of driving out of business any other person engaged therein, or who for such purpose shall in the course of such business sell any article or product at less than its fair market value, or at a less price than it is accustomed to demand or receive therefor in any other place under like conditions or who shall sell any article upon a condition, contract or understanding that it shall not be sold again by the purchaser, or restrain such sale by the purchaser shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $5000 or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."
[33] I.C. § 44-712 provides: "The term `labor dispute' means any controversy between an employer and the majority of his employees in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives."
[34] Local 24, International Brotherhood of Teamsters, etc. v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959). The Oliver decision, embodying the approach taken to federal preemption in Garner and later in Morton, appears to blunt the earlier thrust of Giboney v. Empire Storage Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949), which held that picketing, whose purpose conflicted with a state restraint of trade law, could be enjoined by a state court. Oliver leaves little room for the application of such a law. See also the progeny of Giboney: Hughes v. Superior Court of Contra Costa County, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); Local 309, International Brotherhood of Teamsters, etc. v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995 (1950). Compare the cases arising under state legislation apparently authorized by the federal Act: Local 695, International Brotherhood of Teamsters v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957); Pappas v. Stacey, 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770 (1955), dismissing appeal from 151 Me. 36, 116 A.2d 497 (1955); Local Union No. 10, United Ass'n of Journeymen, etc. v. Graham, 345 U.S. 192, 73 S.Ct. 585, 97 L.Ed. 946 (1953); Building Service Employees Int'l Union, Local 262 v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045 (1950).
[35] Weber v. Anheuser-Busch, supra note 30, 348 U.S., at 480, 75 S.Ct. at 487.
[36] See, e.g., International Ass'n of Machinists v. Southard, 170 Colo. 119, 459 P.2d 570 (1969); cf. Lipman v. Brisbane Elementary School Dist., 55 Cal.2d 224, 11 Cal. Rptr. 97, 359 P.2d 465 (1961).
[37] 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855 (1941), reh. denied, 312 U.S. 715, 61 S.Ct. 735, 85 L.Ed. 1145 (1941).
[38] Accord, Amalgamated Food Employees Union, Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) (dictum); Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58 (1943); Baker, Pastry Drivers & Helpers Local 802, of International Brotherhood of Teamsters, etc. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178 (1942). Compare Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942), reh. denied, 316 U.S. 708, 62 S.Ct. 1038, 86 L.Ed. 1775 (1942), holding that the First Amendment does not protect picketing which constitutes a secondary activity. Application of that holding to this case will turn on findings made by the district court on remand.
[1] 29 U.S.C.A. § 187.
[2] 29 U.S.C.A. § 158(b) (4).
[3] Garner v. Teamsters Local 776, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); Teamsters Local 20 v. Morton, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).