**BILLY JACK FOR HER, INC., Plaintiff,**

**v.**

**NEW YORK COAT, SUIT, DRESS, RAIN-WEAR AND ALLIED WORKERS' UN-ION, ILGWU, AFL–CIO, LOCAL 1–35, 10, 22, 48, 77, 89 AND 189, Defendant.**

**No. 81 Civ. 1605 (RJW).**

United States District Court,
S. D. New York.

March 31, 1981.

As Amended April 2, 1981.

Herman E. Cooper, P.C., New York City, for plaintiff; Jonathan L. Sulds and Herman E. Cooper, New York City, of counsel.

Lewis, Greenwald & Oberman, P.C., New York City, for defendant; Everett E. Lewis and Thomas M. Kennedy, New York City, of counsel.

ROBERT J. WARD, District Judge.

This action was commenced in the Supreme Court of the State of New York, New York County ("state court"), by Billy Jack for Her, Inc. ("Billy Jack"), a New York corporation engaged in the apparel industry within the Southern District of New York. The complaint filed in the action alleges that defendant, the New York Coat, Suit, Dress, Rainwear and Allied Workers' Union ("the Union"), has engaged and continues to engage in picketing activities that constitute a tortious interference with Billy Jack's contractual relations, in violation of New York law. Billy Jack seeks monetary damages and injunctive relief against the Union on account of this allegedly unlawful conduct.

In an *ex parte* temporary restraining order signed March 14, 1981, Justice Andrew R. Tyler of the state court prohibited all picketing by the Union at Billy Jack's premises or at the premises of any of Billy Jack's contractors. Shortly thereafter, the Union removed the action to this Court by filing a petition for removal with the clerk of this Court. Billy Jack now moves, by order to show cause, for an order remanding this action to state court on the ground that original federal subject matter jurisdiction is lacking in this case. The Union moves, also by order to show cause, for an order modifying the state court temporary restraining order to permit peaceful picketing to occur. For the reasons hereinafter stated, Billy Jack's motion is denied. The Union's motion is denied as moot.[1]

## BACKGROUND

Billy Jack sells women's dresses. It employs approximately thirty people, who are engaged in various sales functions at its place of business at 1375 Broadway in New York City. Plaintiff does not manufacture the garments that it sells, but instead acts as a "jobber," designing garments and patterns that it then furnishes to independent, outside contractors together with dress material and manufacturing specifications. These contractors make the Billy Jack garments and deliver them to plaintiff, which in turn sells them to retailers.

Billy Jack's employees at 1375 Broadway are represented by General Trades Employees Union, Local 5A ("Local 5A"). In October 1977, Local 5A and plaintiff entered into a three-year collective bargaining agreement setting forth the terms and conditions of employment for Billy Jack's employees. At the same time, Local 5A and Billy Jack entered into a three-year "Hazantown agreement,"[2] setting forth the terms and conditions under which the latter may arrange for outside contractors to manufacture its garments. Each agreement was replaced by a similar successor agreement in October 1980.

Earlier this month, the Union, apparently contending that Billy Jack's current Hazantown agreement is invalid, began efforts to organize the workers at the shops of plaintiff's contractors. The Union demanded that Billy Jack enter into a new Hazantown agreement with the Union. At the same time, the Union recognized the validity of the collective bargaining agreement covering Billy Jack's own employees, and expressly disclaimed any intention of organizing plaintiff's employees. As part of the Union's efforts to organize the employees of Billy Jack's contractors, the Union commenced picketing at the premises of a number of plaintiff's contractors, and also at Billy Jack's place of business at 1375 Broadway. The object of the picketing was to induce Billy Jack to enter into a Hazantown agreement with the Union.

Shortly after the picketing commenced, Billy Jack began this action in state court, claiming that the Union's picketing, since it had the objective of causing Billy Jack to break its current Hazantown

---

1. In *Granny Goose Foods, Inc. v. Teamsters Local No. 70*, 415 U.S. 423, 439–40, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974), the Supreme Court held that "[a]n *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b), measured from the date of removal." Rule 65(b), Fed.R.Civ.P., limits the duration of a temporary restraining order such as was issued here to ten days. Justice Tyler issued his *ex parte* order on March 14, 1981. The parties disagree on the date removal occurred; however, the latest possible day was March 20, 1981. Applying *Granny Goose* and Rule 65(b) to these facts, Justice Tyler's order

expired on March 30, 1981 at the latest, which was yesterday. Since the order of which the Union complains has already expired, the Union's modification motion is denied as moot.

2. "Hazantown agreements" are agreements between a jobber, such as Billy Jack, and a union, whereby the jobber agrees to "farm out" production only to shops approved or represented by the union. They are named after the jobber involved in the case of *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers' Union*, 494 F.2d 1230 (2d Cir. 1974), in which the Court of Appeals for this Circuit held that union picketing to achieve such an agreement is not an unfair labor practice. *Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union*, 643 F.2d 905, 906 (2d Cir. 1981).

agreement and enter into a new one, constituted a tortious interference with the contractual relations between Billy Jack and Local 5A and hence violated New York law. As noted above, Justice Tyler signed a temporary restraining order that prohibited all picketing by the Union at Billy Jack's premises or at the premises of any of Billy Jack's contractors.[3] The Union then filed the petition for removal that brought the case before this Court and set the stage for the motions that are the subject of today's decision.

### DISCUSSION

The right of the defendant in a state court civil action to remove the action to federal court is governed by 28 U.S.C. § 1441(a), which provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Billy Jack contends that the instant action is not one over which the federal district courts have original subject matter jurisdiction, and consequently moves for an order remanding this case to the New York state courts. The Union argues, on the other hand, that this action is one "arising under [an] Act of Congress regulating commerce" within the meaning of 28 U.S.C. § 1337, and thus is removable as an action "founded on a claim or right arising under the . . . law of the United States" within the meaning of 28 U.S.C. § 1441(b).[4] The Union presents two theories in support of this argument. First, it contends that Billy Jack's action should be deemed to "arise under" federal law because, although the complaint is pleaded solely in terms of state law, it alleges facts that are sufficient to state a number of federal causes of action. Second, the Union argues that the state law upon which Billy Jack relies has been preempted by federal labor law, and that as a result Billy Jack's action must be treated as "arising under" federal law because that is the only law providing a potential basis for Billy Jack's action. The Court hereinafter treats each of these contentions in turn.

### Factual Allegations of the Complaint as a Basis for Federal Question Jurisdiction

The Union urges that the allegations of Billy Jack's complaint, if proven, would establish violations of sections 8(b)(4)(B) and 8(b)(7)(A) of the National Labor Relations Act ("the NLRA"), 29 U.S.C. § 158(b)(4)(B),

---

3. Billy Jack's complaint, while it mentions acts of violence allegedly committed by the Union's pickets, see Complaint at ¶¶ 10–14, is directed at preventing the Union's picketing entirely, and not at controlling the manner in which it is conducted. Perusal of the complaint makes it clear that Billy Jack is relying on the purported unlawfulness of the Union's objective, and not any illegality of the means by which the Union is seeking to attain its purpose, as the basis for relief. Were Billy Jack's complaint directed at the allegedly violent nature of the Union's picketing, rather than at the Union's objective of securing a Hazantown agreement with Billy Jack, the case before the Court would be entirely different. It is clear that federal labor law does not preempt state law to the extent state law proscribes violent picketing. *UAW v. Russell*, 356 U.S. 634, 644; 78 S.Ct. 932, 938, 2 L.Ed.2d 1030 (1958). The Court's holding in the present case, depending as it does on a finding that the state law upon which Billy Jack relies has been preempted by federal labor law, would thus be different were Billy Jack's request for relief based on the violence that allegedly attended the Union's picketing. *Cf. Jou-Jou Designs, Inc. v. Local 23–25, International Ladies Garment Workers Union*, No. 80 Civ. 1782, Transcript at 70–72 (S.D.N.Y. Mar. 31, 1980) (remanding action to state court on ground that complaint sought relief from violent picketing, and that case thus did not involve a "labor dispute" within meaning of federal labor laws). Since, however, Billy Jack's complaint challenges the picketing on the basis of its purportedly unlawful object, the Court views Billy Jack's allegations of violence, made in the complaint and in other papers before the Court, to be irrelevant to the Court's disposition of the motion to remand.

4. While the Union relies on 28 U.S.C. § 1337 as the basis for original federal court jurisdiction over this action, 28 U.S.C. § 1331 seems to provide an equally satisfactory ground, particularly in light of the recent amendment of that section to remove the amount in controversy requirement. *See* Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No. 96–486, § 2, 94 Stat. 2369 (1980).

(b)(7)(A), and sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2. Arguing that the federal district courts have original subject matter jurisdiction over actions charging violations of each of these statutes, meaning that such actions may properly be removed to federal court from state court pursuant to 28 U.S.C. § 1441, the Union contends that Billy Jack should not be able to avoid such removal by artfully drafting its complaint so as to plead a violation only of state law and not also of federal law.

■ The Court cannot accept this argument. The general rule, of course, is that removal on the ground of federal question jurisdiction is only proper when the existence of a federal question appears on the face of the complaint. *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127–28, 94 S.Ct. 1002, 1003, 39 L.Ed.2d 209 (1974); *Gully v. First National Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936). In the words of Justice Holmes, "the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Speciality Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). As a result, the plaintiff, by the allegations of its complaint, really determines whether the case is removable as one arising under the laws of the United States. *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 240, 62 L.Ed. 713 (1918). There are accordingly numerous cases holding that a plaintiff alleging facts that would support both a federal and a state law claim is free to confine his claim to one based on state law, and proceed in state court without fear of removal to federal court. 1A Moore's Federal Practice ¶ 0.160, at 185 (2d ed. 1979); *see, e. g., Connecticut v. Levi Strauss & Co.*, 471 F.Supp. 363, 366 (D.Conn.1979) (also citing cases). *See also Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 964 (2d Cir. 1981).

■ While Billy Jack's complaint may indeed allege facts sufficient to state some of the federal claims noted above,[5] legally it relies only on New York law forbidding tortious interference with contractual relations. Under the principles stated above, then, the complaint does not disclose a federal question that could provide the basis for "arising under" jurisdiction. The Union's first argument in favor of removal must accordingly be rejected.

### Federal Preemption as a Basis for Federal Question Jurisdiction

The Union's second argument in support of removal takes its first argument a step further. In a case such as the present one, the Union contends, the state law upon which Billy Jack relies has been entirely preempted by federal law, meaning that Billy Jack's only hope of success in this case is to proceed under federal law. The Union, willing to assume *arguendo* that courts should generally permit a plaintiff to avoid possible removal to federal court by pleading only a state law claim, argues that this general rule should be subject to exception where the state law relied upon by the plaintiff has been preempted by federal law. In order to determine the merits of this argument in the instant case, the Court must first decide the circumstances, if any, under which federal preemption provides a proper basis for the removal of an action to federal court. Assuming such circumstances are found to exist in the abstract, the Court must then determine whether they are present in the instant case, and decide Billy Jack's motion according to the outcome of this determination.

### A

The first question for the Court to decide is under what circumstances, if any, federal

---

5. Contrary to the Union's suggestion, the complaint clearly does not allege facts sufficient to state an antitrust claim. In *Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union, supra* note 2, the Court of Appeals rejected the argument that Hazantown picketing of the type alleged here can be made the object of antitrust attack. In *Jou-Jou*, as here, the picketing sought to replace an existing Hazan-town agreement by a new agreement with a different union. The court, assuming *arguendo* that Hazantown agreements are restraints of trade when viewed in isolation, reasoned that the Union's challenged replacement effort, "even if successful, would involve no net restraint of trade, but merely the substitution of one restraint of trade for another." 643 F.2d at 910.

preemption provides a proper basis for the removal of actions such as this to federal court. It is on this issue that the parties have focused the bulk of their energies in preparing their motion papers and during oral argument before the Court. While there is a certain amount of case law on the subject, it is in conflict, even within this district. Given this conflict, it is necessary for the Court to deal with the problem at length in spite of the fact that some judges have discussed it in relatively great detail.[6]

In order to analyze this question properly, it is important at the outset to draw a distinction between federal preemption on the one hand and exclusive federal jurisdiction on the other. "Federal preemption" refers to a situation, such as the Union contends exists here, where the state law upon which a plaintiff relies has been supplanted by substantive federal law, meaning that federal law must be applied to determine the merits of the plaintiff's claim. "Exclusive federal jurisdiction" refers to cases that only specified federal instrumentalities have jurisdiction to hear. The important distinction to draw between the two concepts is as follows: Federal preemption, by itself, in no way determines the court in which an action may be brought, but only prescribes the law that is to be applied to the claim. Exclusive federal jurisdiction, by itself, does not govern the applicable law, but only the forum empowered to hear the action. *See generally* 1A Moore's Federal Practice ¶ 0.160, at 189 (2d ed. 1979). As will be seen, proper resolution of Billy Jack's instant motion to remand requires the Court to determine first whether there is federal preemption here, and then whether this is a case over which there is exclusive federal jurisdiction.

The Court will deal first with the effect of federal preemption. Some courts have concluded that preemption does not make a claim pleaded under state law into a removable federal law claim.[7] The reasoning of

**6.** While, as described *infra*, the courts are in substantial conflict on this issue, the leading commentators are not, agreeing that federal preemption provides a basis for removal, at least where (as here) federal law also provides an arguable basis for relief. *See* 14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3722, at nn.39, 39.1 (1976 & Supp. 1980); 1A Moore's Federal Practice ¶ 0.160, at 187–89 & nn.24–25, ¶ 0.167[7], at 403 (2d ed. 1979).

**7.** *See, e. g., First National Bank v. Aberdeen National Bank*, 627 F.2d 843, 850–52 (8th Cir. 1980) (en banc); *Washington v. American League of Professional Baseball Clubs*, 460 F.2d 654, 660 (9th Cir. 1972); *Bailey v. Logan Square Typographers, Inc.*, 441 F.2d 47, 51–52 (7th Cir. 1971); *Turner v. Bell Federal Savings & Loan Association*, 490 F.Supp. 104, 105 (N.D. Ill.1980); *Glendale Federal Savings & Loan Association v. Fox*, 481 F.Supp. 616, 625 (C.D.Cal. 1979); *Eure v. NVF Co.*, 481 F.Supp. 639, 643 (E.D.N.C.1979); *Nevada v. King*, 463 F.Supp. 749, 751 (D.Nev.1979); *Oklahoma v. United Health & Retirement Association*, 436 F.Supp. 550, 552 (W.D.Okla.1977); *Coulston v. International Brotherhood of Teamsters*, 423 F.Supp. 882, 884 (E.D.Pa.1976); *Marquette National Bank v. First National Bank*, 422 F.Supp. 1346, 1352–53 (D.Minn.1976); *Johnson v. First Federal Savings & Loan Association*, 418 F.Supp. 1106, 1109 (E.D.Mich.1976); *New York v. Local 1115 Joint Board, Nursing Home & Hospital Employees Division*, 412 F.Supp. 720, 723 (E.D.N.Y.1976); *Lowe v. Trans World Airlines, Inc.*, 396 F.Supp. 9, 12 (S.D.N.Y.1975). None of these precedents control the Court's decision of the instant motion. The Court has searched in vain for one that does. In *United Mine Workers v. Gibbs*, 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court hinted in dictum that it might adopt this rule when it commented that "[i]n the present case . . . the allowable scope of the state claim implicates the federal doctrine of pre-emption," and then proceeded to state that "this interrelationship does not create statutory federal question jurisdiction." However, the Supreme Court subsequently affirmed the decision in the *Avco* case, cited in note 8 *infra*, wherein the Court of Appeals for the Sixth Circuit applied a contrary rule. In *Debevoise v. Rutland Railway Corp.*, 291 F.2d 379, 380 (2d Cir.), *cert. denied*, 368 U.S. 876, 82 S.Ct. 123, 7 L.Ed.2d 77 (1961), the Court of Appeals for this Circuit considered, and rejected, an argument that removal was appropriate because application of the state law relied upon by plaintiff purportedly "interfered with the allegedly exclusive federal power over railway labor disputes created by the Railroad Labor Act." Unfortunately, the *Debevoise* court did not make clear whether it regarded defendant's argument to be that the Railway Labor Act *itself* created an affirmative defense to state law, or whether that act preempted state law and the fact of preemption created the defense. Also, subsequent to *Debevoise*, the court stated that "[e]ven though the

these cases is well expressed by Chief Judge MacMahon's recent decision in *Long Island Railroad Co. v. United Transportation Union*, 484 F.Supp. 1290 (S.D.N.Y.1980). There Chief Judge MacMahon took the view that "[f]ederal preemption is a matter of defense to a state law claim." *Id.* at 1293. Presumably relying on the traditional rule that there is no federal question jurisdiction merely because the complaint anticipates a federal defense, *see Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 154, 29 S.Ct. 42, 44, 53 L.Ed. 126 (1908), Chief Judge MacMahon concluded that removal was improper because the action could not be said to "arise under" federal law. 484 F.Supp. at 1294. The judge rejected the notion that, where there is preemption, the action should be deemed to "arise under" federal law (and hence to be removable) because the plaintiff has no choice but to rely on the preemptive federal law. In *Long Island Railroad*, the preemption argument was based on a purported conflict between New York's Taylor Law and the Federal Railway Labor Act; this conflict arguably made the provisions of the Taylor Law relied upon by plaintiff inoperative, and thus left the plaintiff without a legal remedy. "[I]t is illogical," wrote Chief Judge MacMahon, "to say that the litigant's claim is really predicated on a body of law which grants him no rights." *Id.* at 1293 (quoting *New York v. Local 1115 Joint Board, Nursing Home & Hospital Employees Division, supra* note 7, 412 F.Supp. at 723).

On the other hand, a number of courts have held that an action should be viewed to arise under federal law, despite the plaintiff's intention to plead only a state law claim, if the state law upon which plaintiff relies has been preempted by federal law.[8] The best expression of the reasoning supporting the result in these cases appears in Judge Lasker's decision in *Hearst Corp. v. Shopping Center Network, Inc.*, 307 F.Supp. 551 (S.D.N.Y.1969). Judge Lasker accepted the general rule that, "where the plaintiff has a right to relief *either* under federal law *or* under state law as an independent source of that right, the federal court on removal proceedings may not generally look beyond the face of the initial pleading in the state action to determine whether a federal question is presented." *Id.* at 556. In Judge Lasker's view, however, this "either-or option" is by definition unavailable in a case of preemption, for a finding of preemption represents a conclusion that Congress has determined to supplant state law altogether by federal substantive law, meaning that plaintiff's right to relief, if any, is to be determined exclusively by reference to federal law. *Id.* "In such a case ...," concluded Judge Lasker, "it would be unacceptable to permit that very plaintiff, by the artful manipulation of the terms of a complaint, to [avoid removal and hence to] defeat a clearly enunciated congressional objective." *Id.*

Having given the matter careful consideration, the Court concludes that the posi-

claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law." *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 827 (2d Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). As a result, there appears to be no Supreme Court or Second Circuit precedent clearly stating the rule applicable to this issue.

8. *See, e. g., Fristoe v. Reynolds Metal Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980); *North Davis Bank v. First National Bank*, 457 F.2d 820, 823 (10th Cir. 1972); *Avco Corp. v. Aero Lodge No. 737, International Association of Machinists*, 376 F.2d 337, 340 (6th Cir. 1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *In re Wiring Device Antitrust Litigation*, 498 F.Supp.

79, 82–83 (E.D.N.Y.1980); *Barclay's Ice Cream Co. v. Local No. 757, Ice Cream Drivers & Employees Union*, 103 L.R.R.M. 2048, 2048 n.3 (S.D.N.Y. Sept. 6, 1979); *Teamsters Local 116 v. Fargo-Moorhead Automobile Dealers Association*, 459 F.Supp. 558, 560 (D.N.D.1978); *First Federal Savings & Loan Association v. First Federal Savings & Loan Association*, 446 F.Supp. 210, 212 (N.D.Ala.1978); *Ashley v. Southwestern Bell Telephone Co.*, 410 F.Supp. 1389, 1392–94 (W.D.Tex.1976); *New York v. Local 144, Hotel, Nursing Home & Allied Health Services Union*, 410 F.Supp. 225, 229 (S.D.N.Y.1976); *Rettig v. Arlington Heights Federal Savings & Loan Association*, 405 F.Supp. 819, 823 (N.D.Ill.1975); *Gardner v. Clark Oil & Refining Corp.*, 383 F.Supp. 151, 152 (E.D.Wis.1974).

tion expressed by Judge Lasker takes a better view of the law. Federal preemption is not, by its nature, an affirmative defense to a state law cause of action. In the Court's view, it is wiser to view the preemption doctrine as being analogous to a choice-of-law principle. That is, preemption analysis simply tells the court what law, state or federal, should be referred to in order to determine the plaintiff's right to relief in a given case. As in any other choice-of-law context, the two potentially available bodies of law may differ as to whether they afford the plaintiff a remedy, so that a finding of preemption may indeed have the ultimate consequence of causing the plaintiff's defeat. This does not mean, however, that preemption is in any sense an "affirmative defense" as that term is normally understood. For in many cases, and the instant case may well be an example, a finding of preemption provides no "defense" against the plaintiff's claim because the preemptive federal law also provides a remedy to the plaintiff. As is noted below, the fundamental question in preemption analysis is whether Congress intended to *supplant*, not whether Congress desired to *overrule*, state law. Thus, the doctrine of preemption is basically not concerned with guiding the substantive outcomes of cases, although it may often have an outcome-determinative effect. Instead, it really exists to determine the body of substantive law that governs a particular dispute.[9]

In a case of preemption, then, federal law, by definition, provides the only basis for the plaintiff to gain the relief that it seeks, meaning that any time a court finds preemption it should conclude that the ac-

tion arises under federal law. The Court finds nothing "illogical" in holding that preemption *always* creates "arising under" jurisdiction, even in a case where the preemptive federal law provides the plaintiff with no right to relief. The reports are certainly well stocked with cases where the plaintiff maintained an action under federal law only to discover to its chagrin that federal law afforded no remedy. Surely there is nothing illogical in describing such cases as having arisen under federal law. Accordingly, no illogic inheres in first using preemption analysis to conclude that federal law governs the dispute before the court, meaning that the action arises under federal law, and then proceeding to determine whether the preemptive federal law affords a basis for awarding relief to the plaintiff.

■ The Court holds, then, that where there is federal preemption of the state law upon which a plaintiff's complaint relies, the action "arises under" federal law within the meaning of 28 U.S.C. §§ 1331 & 1337.[10] Such an action is thus generally removable from state to federal court pursuant to 28 U.S.C. § 1441(b). The removability of preemption cases is, however, occasionally limited by principles of exclusive federal jurisdiction, a topic to which the Court adverted earlier and now returns.

■ As a general matter, of course, the mere fact that an action "arises under" federal law does not mean that only federal instrumentalities may hear the case. Congress determines whether the federal courts and agencies that it has established should have exclusive original jurisdiction of cases arising under the laws of the United States,

---

9. The preemption doctrine has its roots, of course, in the supremacy clause, U.S.Const. art. VI, cl. 2. *See Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971); *Hines v. Davidowitz*, 312 U.S. 52, 63, 61 S.Ct. 399, 402, 85 L.Ed. 581 (1941). The formulation of the preemption doctrine adopted here rests on a conception of the supremacy clause as having a dual character: at times acting as a mechanism for determining the proper body of substantive law to be applied to a particular claim, as in preemption analysis; at other times operating as a vehicle for interposing a federal defense to a state cause of action, as where application of a state statute is

resisted on substantive constitutional grounds. While the commentators typically conclude that preemption occurs where the court finds *either* a congressional design to "occupy the field" *or* a conflict between federal and state statutes, *see, e. g.,* Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court,* 75 Colum.L.Rev. 623, 624–26 (1975), in the Court's view the doctrine hinges fundamentally on the occupation ground, and the conflict ground exists merely as a proxy for finding the requisite congressional intent to occupy the field.

10. See note 4 *supra*.

or whether these instrumentalities should exercise their jurisdiction concurrently with the state courts. *Bowles v. Willingham,* 321 U.S. 503, 511–12, 64 S.Ct. 641, 645, 88 L.Ed. 892 (1944). For example, Congress has explicitly conferred upon the federal district courts exclusive jurisdiction over private antitrust suits, 15 U.S.C. §§ 15, 26; *see, e. g., Freeman v. Bee Machine Co.,* 319 U.S. 448, 451 n.2, 63 S.Ct. 1146, 1148 n.2, 87 L.Ed. 1509 (1943). In the absence of an express directive, the state courts have jurisdiction over federal question cases concurrently with the federal courts. 13 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3527, at 124 (1975).

■ The principle just stated leads to an interesting result when superimposed on the rules that govern removal of state court actions to federal court. It is fundamental that federal court jurisdiction under the removal statute is derivative, that is, the jurisdiction of the federal court depends on the jurisdiction of the state court that originally heard the case. Thus, the Supreme Court has stated that "[w]hen a cause is removed from a state court into a federal court the latter takes it as it stood in the former. A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated." *General Investment Co. v. Lake Shore & Michigan Southern Railway Co.,* 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922).

In cases of exclusive federal jurisdiction, then, removal is improper even though the case could have been brought in federal court originally, because the state court has no jurisdiction to which the federal court may succeed under the removal statute. *Friedr. Zoellner (New York) Corp. v. Tex Metals Co.,* 396 F.2d 300, 301 (2d Cir. 1968); *Moskowitz v. Arthur Anderson & Co.,* 464 F.Supp. 1246, 1248 (S.D.N.Y.1979); 1A Moore's Federal Practice ¶ 0.169[1], at 555–56 (2d ed. 1979). In such a case, the federal court should dismiss the action, there being no point in remanding the case to a state court that lacks jurisdiction. *See, e. g., Washington v. American League of Professional Baseball Clubs, supra* note 7, 460 F.2d 654, at 658–59; *Guthrie v. Dow Chemical Co.,* 445 F.Supp. 311, 313–15 (S.D.Tex.1979); *Lowe v. Trans World Airlines, Inc., supra* note 7, 396 F.Supp. at 10. The rationale for ordering dismissal, rather than a remand, in this type of case is that any court, including a state court in an exclusive federal jurisdiction case, always has jurisdiction to dismiss for want of jurisdiction. When an exclusive federal jurisdiction case is removed from state to federal court, then, the federal court succeeds to the state court's inherent jurisdiction to dismiss for lack of jurisdiction, and thus has the power to order a dismissal of the action. *See* 1A Moore's Federal Practice ¶ 0.157[3], at 48 n.8 (2d ed. 1979).[11]

11. In certain cases, Congress has vested "exclusive federal jurisdiction" in an instrumentality other than the federal district courts. For example, an action alleging unfair labor practices in violation of section 8 of the NLRA is normally (though not, as is discussed *infra,* in the present case) within the exclusive original jurisdiction of the National Labor Relations Board ("the NLRB"), meaning that *both* the federal and state courts are without jurisdiction to hear such a case. *Amalgamated Clothing & Textile Workers Union v. J.P. Stevens & Co.,* 475 F.Supp. 482, 486 (S.D.N.Y.1979). Professor Moore suggests that the district court should remand, rather than dismiss, such actions, on the theory that "the first order of business is for the federal court to determine its own jurisdiction and, where the federal court itself lacks jurisdiction and so determines, ... it should not proceed further to decide whether the state court has jurisdiction." 1A Moore's Federal Practice ¶ 0.169[1], at 556–57 (2d ed. 1979). The Court cannot accept this argument, for two reasons. First, given the derivative nature of removal jurisdiction, the Court does not see how the federal court's jurisdiction can be enhanced beyond that of the state court, so as to permit dismissal rather than remand, merely by the fact that the federal court would have had jurisdiction had the action been commenced in federal court. Thus, the same result should pertain in all exclusive federal jurisdiction cases, regardless of how Congress has allocated that exclusive jurisdiction among the various federal instrumentalities. Second, Professor Moore's preference for a remand here seems wholly contradicted by the rule, approved by Professor Moore, that the federal court always has jurisdiction to dismiss for want of jurisdiction. In short, if dismissal is justified in the "ordinary" exclusive federal jurisdiction case, it is no less justified where that jurisdiction is vested in an instrumentality other than the district courts.

### B

The proper disposition of Billy Jack's motion for a remand thus hinges on two distinct determinations: first, whether federal preemption exists here; and second, whether the action is one over which there is exclusive federal jurisdiction. If the Court finds preemption, it may not remand; however, it must dismiss the case *sua sponte* if it also finds exclusive federal jurisdiction. On the other hand, if the Court does not find preemption, the case must be remanded unless the Court finds exclusive federal jurisdiction, in which event the Court must dismiss rather than remand. It only remains, then, for the Court to make the determination whether this case involves federal preemption, or exclusive federal jurisdiction, or both.

### 1. Existence of Preemption

The Supreme Court has provided substantial guidance to the courts of the United States in deciding preemption questions in the context of the federal labor laws.[12] The primary test for federal preemption in the

12. The Union also argues that New York law prohibiting tortious interference with contract has been preempted in cases such as this by the federal antitrust laws. In *Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union, supra* note 2, 643 F.2d at 910, the Court of Appeals for this Circuit specifically rejected a federal antitrust attack on conduct virtually identical to that alleged here. The Union's conduct here is thus not even arguably prohibited by federal antitrust law, meaning that *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and its progeny clearly provide no basis for finding preemption on this theory. See discussion in text *infra.* For the reasons discussed in note 13 *infra,* the alternative route to preemption in the federal labor area created by *Local 20, Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964), also fails to provide a basis for holding that the state law relied upon by Billy Jack has been preempted in cases such as this by federal antitrust law. The Union's preemption argument accordingly must stand or fall on the federal labor laws.

13. The Supreme Court enunciated a subsidiary route to preemption, for cases where the conduct challenged under state law is *not* either arguably prohibited or arguably protected by federal labor law, with its decisions in *Local 20, Teamsters Union v. Morton,* 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964) and *Lodge 76,*

labor area was enunciated in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). There the Supreme Court held that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." *Id.* at 244, 79 S.Ct. at 779. Later in the same opinion, the *Garmon* Court provided a similar formulation of the same test: "[w]hen an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. at 779. As the Supreme Court has recently stated, today "the *Garmon* formulation [still] accurately reflects the basic federal concern with potential state interference with national labor policy." *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 188, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978).[13]

*International Association of Machinists v. Wisconsin Employment Relations Commission,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Under these cases, a finding of preemption is appropriate where the court finds that the absence of federal regulation is indicative of a "congressional determination to leave [the challenged conduct] available," and that to allow the states to regulate the conduct would be "to upset the balance of power between labor and management expressed in our national labor policy." *Local 20, Teamsters Union v. Morton, supra,* 377 U.S. at 260, 84 S.Ct. at 1258. Since the Court concludes *infra* that the Union's alleged conduct here *is* arguably prohibited by federal labor law, these cases are inapposite to the extent the Union's preemption argument is rooted in federal labor law. The Court notes, however, that the *Morton-Machinists* rule lends support to the Court's conclusion *infra* that the necessity for preemption here lies in the possibility that state law might be applied to prohibit conduct that, while *arguably* prohibited by federal law, is in fact permitted by the NLRA, and thus intended by Congress to be available to labor organizations in their dealings with employers. To the extent the Union's argument is based on the federal antitrust laws, see note 12 *supra,* the Court does not find that the silence of the federal antitrust laws on the legality of the Union's conduct is, within the meaning of the *Morton-*

The courts have, however, refused to apply the *Garmon* test in literal or mechanical fashion, particularly in cases, such as this one, where the challenged state law is of general application.[14] The Supreme Court has stated that "inflexible application of the [*Garmon*] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Farmer v. Carpenters Local 25*, 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977). Instead, "the decision to pre-empt . . . state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies" of permitting the state court to proceed. *Vaca v. Sipes*, 386 U.S. 171, 180, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967).

The first question for the Court to decide, then, is whether the Union's alleged conduct is "arguably prohibited," within the meaning of *Garmon*, by federal labor law. Billy Jack alleges that the Union, by picketing to induce Billy Jack to enter into a new Hazantown agreement with the Union, has tortiously interfered with the contractual relations between Billy Jack and Local 5A. Specifically, Billy Jack alleges that the Union's picketing caused eleven of its suppliers to be prevented from doing business with plaintiff, and has been undertaken with the general objective of inducing a breach of the current Hazantown agreement between Billy Jack and Local 5A. The complaint seeks both monetary damages and an injunction against further picketing by the Union.

There can be no doubt that federal labor law provides an arguable basis for finding the Union's alleged conduct unlawful. Section 8(b)(4)(B) of the NLRA, 29 U.S.C. § 158(b)(4)(B) ("Section 8(b)(4)(B)"), prohibits "secondary boycotts," which occur where a labor organization having a dispute with an employer (the "primary employer") forces or attempts to force another employer (the "secondary employer") to discontinue its business dealings with the primary employer. Here, since the Union's dispute is with Billy Jack, the alleged picketing of Billy Jack's contractors potentially constitutes a secondary boycott and hence may fall within the prohibitions of Section 8(b)(4)(B). Section 8(b)(7)(A) of the NLRA, 29 U.S.C. § 158(b)(7)(A) ("Section 8(b)(7)(A)"), prohibits a labor organization from picketing an employer with the object of gaining recognition from the employer, where the employer has previously lawfully recognized a different labor organization. Here, since Billy Jack has allegedly lawfully recognized Local 5A, the picketing of Billy Jack's Broadway place of business may constitute unlawful picketing within the meaning of Section 8(b)(7)(A).

As noted above, the preemption question posed by the instant case is not entirely controlled by the fact that federal labor law provides an arguable basis for condemning the Union's challenged picketing activity. The *Garmon* Court itself indicated that a finding of preemption requires not just a finding of arguable federal prohibition, but also consideration of whether the case touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction,

*Machinists* rule, expressive of a congressional determination to permit such conduct in striking the balance of power between labor and management.

**14.** Professor Cox has helpfully defined laws of general applicability as "laws that do not rest upon legislative, administrative, or judicial evaluation of the several interests of employers, labor unions, employees, and the public in union organization, collective bargaining, or a labor dispute." Cox, *Recent Developments in Federal Labor Law Preemption*, 41 Ohio St. L.J. 277, 293 (1980). He argues that state laws of

general applicability should never be subject to preemption where, as here, the conduct they purportedly forbid is arguably prohibited (as distinct from arguably protected) by federal labor law. *Id.* at 281–82. However, the Supreme Court has consistently taken the position that the preemption decision does not depend on whether the state law in question is of general applicability. *See, e. g., New York Telephone Co. v. New York State Department of Labor*, 440 U.S. 519, 533, 99 S.Ct. 1328, 1337, 59 L.Ed.2d 553 (opinion of Stevens, J.), 557–58 (Powell, J., dissenting).

we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 244, 79 S.Ct. at 779. Subsequent decisions of the Supreme Court have explained that this latter determination depends on two factors. First, the court must consider the significance of the state interest in protecting the citizen from the challenged conduct. Second, the court should consider the degree of similarity between the controversy presented to the state court and that which would have been presented to the NLRB had the plaintiff elected to start its action there. *See Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, supra,* 436 U.S. at 196–97, 98 S.Ct. at 1757; *Farmer v. Carpenters Local 25, supra,* 430 U.S. at 298–99, 97 S.Ct. at 1062.

Applying these factors in the context of the instant case, the Court concludes that a finding of preemption is unavoidable here because of the close relationship between the controversy as it is presented under state law and as it would have been presented under federal law had Billy Jack filed a complaint with the NLRB. Both a state claim for tortious interference with contract and a federal claim under Sections 8(b)(4)(B) and 8(b)(7)(A) would challenge the *object* of the Union's picketing activity. *Cf. Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, supra,* 436 U.S. at 198, 98 S.Ct. at 1758 (declining to find preemption on the ground that plaintiff's state claim "only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim"). More to the point, it is apparent to the Court that a substantial issue before both the state court and the NLRB would concern the validity of the current Hazantown agreement between Billy Jack and

Local 5A. *See* 29 U.S.C. § 158(b)(7)(A) (prohibiting picketing of an employer with objective of forcing employer to recognize labor organization, where "employer has *lawfully* recognized . . . any other labor organization") (emphasis added); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 837 (2d Cir. 1980) (under New York law, "[a]n essential element of the tort of inducement of breach of contract is the existence of a *valid* contract") (emphasis added).[15]

▮ The reason why the similarity between the two controversies requires preemption may be fairly easily explained. Preemption in the "arguably prohibited" situation does not, in the Court's view, depend on the notion that only the NLRB may redress violations of section 8 of the NLRA; this fact presents a case for exclusive federal jurisdiction, not federal preemption. "[T]he case for preemption rests rather on the prospect that arguably prohibited conduct may be actually not prohibited—and therefore intended to be free of all legal restraint, state as well as federal." Lesnick, *Preemption Reconsidered: The Apparent Reaffirmation of Garmon,* 72 Colum.L.Rev. 469, 477 (1972). In other words, federal labor law, in protecting some conduct, prohibiting other conduct, and leaving still other conduct neither protected nor prohibited, establishes a particular accommodation among the various groups engaged in the labor arena. *See* Cox, *supra* note 14, at 295. Where conduct is arguably, but not necessarily, prohibited by federal labor law, preemption is required if application of state law might cause a different accommodation to be struck than that established by the federal statutory scheme. Plainly, there need be no concern that state law might be applied so as to disturb signif-

---

**15.** This case is thus far different from those cases in addition to *Sears* where the Supreme Court has carved out an "exception" to *Garmon's* "arguably prohibited" approach. *See, e. g., Farmer v. Carpenters Local 25, supra,* 430 U.S. at 304, 97 S.Ct. at 1065 (no preemption where complaint alleged intentional infliction of mental distress) (while challenged conduct was arguably prohibited by NLRA, action before NLRB would focus on whether statements

were made with discriminatory intent, and not on whether statements were made with intent and effect of causing emotional distress); *Linn v. Plant Guard Workers Local 114,* 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966) (no preemption where complaint alleged libel) (while challenged activity was arguably prohibited by NLRA, action before NLRB would focus on coercive or misleading nature of the statements rather than their defamatory quality).

icantly the balance struck by Congress unless there is a substantial similarity between the two controversies as they would be respectively presented to the state court and the NLRB.

This case involves just such a substantial similarity: the state court action and the potential NLRB claim attack the Union's picketing in the same fashion, albeit on different legal theories. It is possible that the NLRA does not prohibit the Union's objective, in which event application of state law to declare that objective unlawful would alter the balance struck by Congress in precisely the fashion that the preemption doctrine is designed to avoid. *See Garner v. Teamsters Local 776*, 346 U.S. 485, 499–500, 74 S.Ct. 161, 170, 98 L.Ed. 228 (1953). The Court accordingly sees no alternative to holding that the state law at issue here has been preempted in cases such as this.

In sum, the Court is satisfied that Billy Jack's claim of tortious interference with contract challenges conduct that is "arguably prohibited" by federal labor law, and believes that to permit the New York state courts to adjudicate Billy Jack's claim would create a realistic risk of interference with the balance struck by the NLRA respecting unfair labor practices. As a result, the Court is constrained to hold that New York law prohibiting tortious interference with contract has, in the context of cases such as this one, been preempted by federal law.[16]

### 2. *Exclusive Federal Jurisdiction*

Unlike most of the other issues presented by Billy Jack's motion, the question whether there is exclusive federal jurisdiction over this action is fairly easily resolved. As noted above, the facts alleged in Billy Jack's complaint are sufficient to state a claim under either Section 8(b)(4)(B) or Section 8(b)(7)(A). To the extent Billy Jack's complaint seeks injunctive relief, it is clear that the case involves exclusive federal jurisdiction. As a general matter, the NLRB has exclusive original jurisdiction over any activity that is arguably subject to section 8 of the NLRA. *Amalgamated Clothing & Textile Workers Union v. J.P. Stevens & Co.*, 475 F.Supp. 482, 486 (S.D.N.Y.1979). The state courts are thus normally without jurisdiction to remedy conduct that is arguably prohibited by section 8 of the NLRA. *Amalgamated Association of*

16. The Court finds support for the conclusion just reached in Justice Stevens' opinion in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters, supra*, the most recent majority opinion of the Supreme Court in this area. Justice Stevens, in holding that state regulation of activity arguably prohibited by section 8 of the NLRA cannot avoid preemption simply because it is pursuant to a law of general application, noted that the Court had previously held, in *Amalgamated Association of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 296, 91 S.Ct. 1909, 1922, 29 L.Ed.2d 473 (1971), that state contract laws were preempted in the federal labor context to the extent they purported to govern a union member's rights and duties under the union security clause in the collective bargaining agreement. In Justice Stevens' view, "[p]ermitting the state court to exercise jurisdiction pursuant to a law of general application in these circumstances would have entailed a 'real and immediate potential for conflict with the federal scheme.'" 436 U.S. at 195 n.24, 98 S.Ct. at 1756 n.10 (quoting *Farmer v. Carpenters Local 25, supra*, 430 U.S. at 301 n.10, 97 S.Ct. at 1056 n.10). Justice Stevens then went on to comment that "[a]n identical result would undoubtedly obtain were an employer subjected to recognitional or secondary picketing to seek injunctive relief in state court on the theory that the union was tortiously interfering with his freedom to contract." 436 U.S. at 194 n.24, 98 S.Ct. at 1756 n.24.

The recent decision of the Court of Appeals for this Circuit in *Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union, supra* note 2, does not affect the Court's conclusion that New York law is preempted here. In *Jou-Jou*, the court held, on facts virtually identical to those alleged here, that plaintiff had failed to allege a viable Sherman Act claim. 643 F.2d at 910–11. The court then commented that "[this case] is essentially either a state claim for tortious interference with contractual relations, or an NLRB case." *Id.* In the Court's view, by this comment the *Jou-Jou* court was merely indicating some potential avenues for similarly situated plaintiffs to explore—not providing a road map showing the path to successful litigation. As today's decision shows, the particular route chosen by Billy Jack, while not leading to an absolute dead end, as does the one used in *Jou-Jou*, is plainly not the most desirable course to follow in a case such as this.

*Street, Electric Railway & Motor Coach Employees v. Lockridge, supra* note 16, 403 U.S. at 292, 91 S.Ct. at 1920. Accordingly, it is usually proper to view a section 8 case as being an action over which there is exclusive federal jurisdiction. *See, e. g., Beacon Moving & Storage, Inc. v. Local 814, International Brotherhood of Teamsters,* 362 F.Supp. 442, 445 (S.D.N.Y.1973); 1A Moore's Federal Practice ¶ 0.167[7], at 399–400 (2d ed. 1979).[17]

The Court notes, however, that Billy Jack seeks monetary damages in addition to injunctive relief. Section 303(b) of the Labor-Management Relations Act, 29 U.S.C. § 187(b), expressly grants the state courts and the federal district courts *concurrent* original subject matter jurisdiction over actions seeking monetary damages for a Section 8(b)(4)(B) secondary boycott. *United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 665–66, 74 S.Ct. 833, 838, 98 L.Ed. 1025 (1954); *Douglas v. International Brotherhood of Electrical Workers Union,* 136 F.Supp. 68, 73 (W.D.Mich.1955); *Simpkins v. Southwestern Idaho Painters District Council No. 57,* 95 Idaho 165, 505 P.2d 313, 318–19 (1973). Viewed as a whole, then, this particular action is not one over which there is exclusive federal jurisdiction.

### CONCLUSION

Applying the principles discussed earlier to the conclusions just reached, the Court holds that removal was proper in this case and that Billy Jack's motion for a remand must be denied. Remand is inappropriate because the state law upon which Billy Jack relies has been preempted by federal labor law, meaning that Billy Jack's right to relief, if any exists, depends entirely on federal law and thus must be deemed to "arise under" federal law. Nor is dismissal required here, because the state courts and federal district courts have concurrent original subject matter jurisdiction over Billy Jack's action insofar as it states a claim for

monetary damages under section 8(b)(4)(B) of the NLRA.

Billy Jack's motion for a remand is accordingly denied. The Union's motion for a modification of the temporary restraining order issued by Justice Tyler of the state court is denied as moot.

It is so ordered.

---

17. Most section 8 cases are not simply cases of exclusive *federal* jurisdiction, but are in fact cases within the exclusive original jurisdiction of the NLRB. For the reasons discussed in text *infra,* this is not such a case. Assuming it were, the proper result would be for the Court to deny the instant motion to remand, but then to dismiss the action *sua sponte* without prejudice to its being refiled before the NLRB. See note 11 *supra.*