**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 825, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.**

**No. 14216.**

United States Court of Appeals Third Circuit.

Argued Oct. 10, 1963.

Decided Jan. 8, 1964.

---

General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, James McC. Harkless, Attorney, N. L. R. B., on the brief) for petitioner.

John J. Mooney, New York City (Michael Breitkopf, Newark, N. J., on the brief), for respondent.

Before STALEY, HASTIE and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The National Labor Relations Board has found that respondent violated § 8 (b) (4) (i) and (ii) (B) of the National Labor Relations Act, as amended. The operative facts which formed the basis for that finding have been fully set forth in our opinion, filed this day, in the companion case of National Labor Relations Board v. Local 825, International Union of Operating Engineers, AFL-CIO, 326 F.2d 213 (C.A.3, 1964), in which the Board concluded that respondent had also violated the jurisdictional-dispute section of the Act. Accordingly, we will not restate those facts in this opinion except where essential to discussion of the issues raised herein.

From an examination of the provisions of § 8(b) (4) (i) and (ii) (B),[1] it will be seen that a violation of that section requires two elements, i. e., the union must engage in conduct proscribed therein, and an object of that conduct must be "forcing or requiring any person * * * to cease doing business with any other person." The Board found that by its actions of May 3 and May 9, 1961, respondent had induced or encouraged the employees of Elmhurst Contracting Company and Selby Drilling Company to engage in a work stoppage or strike and had thereby threatened, restrained, and

. Solomon Hirsh, N. L. R. B., Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate

1. "§ 158. Unfair labor practices
&ast; &ast; &ast; &ast; &ast;
"(b) It shall be an unfair labor practice for a labor organization or its agents—
&ast; &ast; &ast; &ast; &ast;
"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course

of his employment to * * * perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
&ast; &ast; &ast; &ast; &ast;
"(B) forcing or requiring any person . * * * to cease doing business with any other person * * *." 29 U.S.C.A. § 158(b) (4) (i) & (ii) (B).

coerced those employers. More important, the Board concluded that an object of this conduct was to force or require Elmhurst and Selby to cease doing business with Nichols Electric Company.

Respondent denies both that the actions of May 3 and May 9 constituted a strike or work stoppage, and that it threatened, restrained, and coerced Elmhurst and Selby.[2] More fundamentally, respondent argues that the record is devoid of evidence that the union's conduct was for an object proscribed by § 8(b) (4) (i) and (ii) (B).

We find it unnecessary to consider respondent's initial contention, for we agree that there is a lack of substantial evidence to support the Board's conclusion that an object of the work stoppage was to force Elmhurst and Selby to cease doing business with Nichols.

In its decision the Board noted that there was no explicit demand upon Elmhurst and Selby for this purpose. Indeed, there is no evidence that any union representative ever discussed the possibility of such an alternative with either employer. There was no communication of any kind between respondent and those employers relating to the work stoppage; Elmhurst's project manager testified that he was informed of the work stoppage indirectly, and Selby's superintendent stated that he was notified of it by O'Brien, Nichols' foreman. Nonetheless, the Board concluded that the surrounding circumstances established that an object of respondent's conduct was to force these employers to cease doing business with Nichols. It reasoned:

"* * * Thus, Selby and Elmhurst, in order to keep their employees at work, were faced with the choice of ceasing to do business with Nichols or having the work done in some other manner. Although the work was finally accomplished manually by Nichols at the request of Selby's superintendent, Kangas, there is no indication that Respond-

ent suggested this or any other alternative. We conclude, then, that an object of the strike was to force Selby and Elmhurst to cease doing business with Nichols. Even, assuming, *arguendo,* that Respondent merely intended by its strike to force Selby and Elmhurst to require Nichols to change its method of operation, this in itself would have disrupted or seriously curtailed the existing business relationship between Nichols and these two other contractors, which would have been tantamount to causing the latter employers to cease doing business with Nichols."

But the undisputed evidence, as set forth in our opinion in 326 F.2d 213, shows that the operating engineers left their jobs for the purpose of preventing the electricians employed by Nichols from operating the power auger and winch. There is simply no evidence that an object of this action was to force their own employers to cease doing business with Nichols. To put the matter another way, the record conclusively demonstrates that the work stoppage was merely an incidental consequence of the efforts of the engineers to prevent the operation of the power equipment by the electricians, and to compel Nichols to assign the work to them. In order to do this they had to leave their jobs, but this does not mean that in doing so they sought to compel their employers to cease doing business with Nichols. In short, the conduct of the union was directed against Nichols and only incidentally did it affect Elmhurst and Selby.

█ In its brief the Board argues that "by virtue of the pressure put upon Nichols by the secondary employees' work stoppage, Nichols was forced to forsake the efficiency and economies offered by the power-driven auger, and had to fall back upon the slower and costlier method of digging each hole with manual labor." This argument misses the mark, for to

---

**2.** In this court respondent has abandoned its argument that the persons alleged

to have induced the work stoppage were not its agents.

constitute unlawful secondary activity the union must exert pressure upon the secondary employer with an object of forcing him to cease doing business with the primary employer. Absent this, direct pressure upon the primary employer is not a violation of § 8(b) (4) (i) and (ii) (B).

At oral argument, the only evidence which counsel for the Board was able to cite as showing threats, coercion, and restraint upon the secondary employers for the prohibited object was the statements by various union members that their contract with Elmhurst and Selby required that the work be assigned to them. But these statements were made, not to Elmhurst and Selby, but to Nichols in support of the engineers' claim that they were entitled to the work. In these circumstances they cannot be viewed as evidence of threats, coercion, and restraint upon the secondary employers to force them to cease doing business with Nichols.[3]

In support of its position the Board cites Retail Clerks Union Local 770 v. National Labor Relations Board, 11 U.S. App.D.C. 246, 296 F.2d 368 (1961). But that case aids the position of respondent, for there the court held it essential that the Board provide factual support for its conclusion that an object of the work stoppage was to force a cessation of business.[4]

In sum, respondent's activities against Nichols constituted a violation of the jurisdictional-dispute section of the statute. The Board so found, and we have already stated that we will enforce its decree in that regard. National La-

bor Relations Board v. Local 825, International Union of Operating Engineers, 326 F.2d 213. But the Board has gone further in this case and has attempted to convert that activity into a violation of § 8(b) (4) (i) and (ii) (B). The record will not support the attempt.

The petition for enforcement will be denied.

---

3. Respondent also argues that, assuming, *arguendo*, that an object of the work stoppage was to force Elmhurst and Selby to cease doing business with Nichols, such conduct is lawful under § 8(e) of the Act. 29 U.S.C.A. § 158(e). In view of our determination, we need not examine that argument here. However, the same contention was advanced in 326 F. 2d 213, and was there rejected. Of course, in doing so, we did not hold that an object of the work stoppage was to force a cessation of business.

4. The Board also cites New York Mailers' Union No. 6 v. National Labor Relations Board, 114 U.S.App.D.C. 370, 316 F.2d 371 (1963) ; Los Angeles Mailers Union No. 9 v. National Labor Relations Board, 114 U.S.App.D.C. 72, 311 F.2d 121, (1962) ; National Labor Relations Board v. Amalgamated Lithographers of America (Ind.), 309 F.2d 31 (C.A.9, 1962). However, in each of these cases the evidence before the Board amply supported the inference which it drew.