**CHIPMAN FREIGHT SERVICES, INC., a subsidiary of Chipman Corporation, a California corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Brotherhood of Teamsters and Auto Truckdrivers Local 70 of Alameda County, Real Party in Interest.**

No. 87–7135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1987.

Decided April 7, 1988.

George J. Tichy, II, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioner.

Charles Donnelly, N.L.R.B., Washington, D.C., for respondent.

Before FLETCHER, FARRIS and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Chipman Freight Services ("Chipman") appeals from an order of the National Labor Relations Board ("Board" or "NLRB") determining that a "primary" labor dispute existed between Chipman and Teamsters' Local 70 ("the Union") such that the Union's picketing on behalf of independent contractors against Chipman did not violate section 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA").

BACKGROUND

Chipman transports cargo in and out of its terminals using drivers who are em-

ployed by it or its customers or who are independent contractor subhaulers whose services are terminable at will by either party.

In July 1985 Chipman canceled its outstanding subhaul agreements and proposed a new agreement that would substantially change the terms on which it did business with the independents. Four of the twenty-two independents entered into the new agreement. At the time, Teamsters' Local 70 was trying to organize all of the independent subhaulers in the area. Some of those used by Chipman attended Union meetings; two signed cards authorizing the Union to represent them.

At a meeting with Union representatives on August 7, some of the independents voted to picket Chipman to reinstate the old subhaul agreement; Local 70 then began picketing Chipman's terminals in their support.

Picketing continued until November 1985, when this court issued an injunction against it, pending an appeal of the decision of the U.S. District Court for the Northern District of California in *Scott v. Teamsters' Local 70*, 633 F.Supp. 121 (N.D. Cal.1985), that denied a temporary injunction of Local 70's picketing. The appeal in that case was dismissed as moot after the NLRB's final order dismissing Chipman's complaint was issued in this case.

### STANDARD OF REVIEW

The decision of the NLRB should be upheld if the NLRB correctly applied the law and if there is substantial evidence on the record as a whole to support its findings of fact. *NLRB v. International Longshoremen's Ass'n*, 473 U.S. 61, 78–79, 105 S.Ct. 3045, 87 L.Ed.2d 47 (1985). In addition, the court should yield to the NLRB on its "reasonably defensible" interpretations of the National Labor Relations Act. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

### ANALYSIS

#### I

Chipman argues that Local 70's picketing is forbidden by the plain language of section 8(b):

It shall be an unfair labor practice for a labor organization or its agents ... (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce ... to engage in[ ] a strike ... or (ii) to threaten, coerce, or restrain any person engaged in commerce ... where in either case an object thereof is ... (B) forcing or requiring any person to ... cease doing business with any other person ...

*Provided,* [t]hat nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

29 U.S.C. § 158(b). The validity of its claim thus hinges on a finding that the strike by Local 70 is not a "primary strike" protected by the proviso. But section 8(b)(4)(B) nowhere defines a protected primary strike in terms of the employer-employee relation; the term has been given meaning only by judicial decision and reference to the legislation's history and that meaning has often proved elusive. *See, e.g., National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 645, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357 (1967).

Chipman thus greatly oversimplifies the issue when it asserts that the court should decide the case solely on the basis of the plain language of the section.

#### II

Chipman presents three arguments in support of its claim that Local 70's picketing against Chipman is not protected by the "primary" picketing proviso in section 8(b)(4)(B). It argues, first, that the provisions of the NLRA were designed to protect only the rights of *employees*, not independent contractors; second, that a strike as defined by the LMRA is a work stoppage by *employees;* and, third, that a primary strike concerns only the wages, hours, or working conditions of *employees.*

The first argument has some persuasion. In the definitional section of the Act, 29 U.S.C. § 152(3), Congress explicitly amend-

ed the term "employee" to exclude "any individual having the status of an independent contractor" in response to a Supreme Court decision that extended the Act's general coverage to independent contractors. *See NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); H.R.Rep. No. 245 on H.R. 3020 at 18 (April 11, 1947). It is true that, by retaining independent status, the subhaulers lose many of the protections of the Act. However, circumscription of the scope of the Act's protections is not synonymous with an expansion of its prohibitions. Section 13 of the Act makes clear that Congress intended to place only a narrow limitation on the power to strike:

> Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right.

29 U.S.C. § 163.

> § 13 is a command of Congress to the courts to resolve doubts and ambiguities [in Section 158] in favor of an interpretation ... which safeguards the right to strike....

*NLRB v. Drivers Local 639*, 362 U.S. 274, 282, 80 S.Ct. 706, 711, 4 L.Ed.2d 710 (1960). Again, the section itself makes no reference to limiting its application to the employer-employee relation.

## III

Chipman has constructed a textual argument by reading section 13 in conjunction with the definition of a "strike" from the Labor–Management Relations Act of 1947, as a work stoppage "by employees." *See* 29 U.S.C. § 142(2). But this argument would have it that a union can never act on behalf of anyone but statutory employees. In light of precedent and other parts of the NLRA emphasizing the importance of the right to strike, we find this an unduly narrow reading of the Act. For purposes of the subchapter in which section 8(b) is found, a " 'labor dispute' includes any controversy ... regardless of whether the disputants stand in the proximate relation of

employer and employee," 29 U.S.C. § 152(9), suggesting that the drafters did not intend to limit the application of the section so greatly. It seems more probable that they intended to allow unions to act on behalf of other parties to labor disputes, subject to the same general strictures.

## IV

Chipman argues that a protected primary activity is one concerning only the wages, hours, or working conditions of employees. For support, it cites the "touchstone" test promulgated by the Supreme Court in *National Woodwork:* "whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees." 386 U.S. at 645, 87 S.Ct. at 1268.

As that Court admitted, it is not always a simple test to apply. *Id.* Also, the exact wording of the test can be deceptive when removed from the context of that case. In *National Woodwork*, the Court considered whether a union's strike against a general contractor who used premachined doors instead of those fitted by union carpenters on the jobsite was a secondary strike in violation of section 8(b)(4)(B). Recognizing that the core concept of the section was aimed at preventing "pressure tactically directed toward a neutral employer in a labor dispute not his own," *id.* at 623, 87 S.Ct. at 1257 the Court held that the boycott was not an unfair labor practice because it related to the working conditions of the jobsite carpenters. The Court's definition of a "primary dispute" focused generally on the directness of the union's grievance and the ability of the boycotted employer to control its resolution, but was by no means clearcut: "The determination whether ... Section 8(b)(4)(B) [was violated] cannot be made without an inquiry into ... all the surrounding circumstances." *Id.* at 644, 87 S.Ct. at 1268. The Court did not consider a distinction in its holding should one of the parties to the dispute not be a statutory employee, so that we would distort that Court's decision by placing undue emphasis on the particular words of the "touchstone" test. Rather, we look to the basic

distinction drawn by *National Woodwork* between a strike against a primary disputant and one against an unoffending neutral.

## V

Chipman claims that the Board's reliance upon the decision in *Production Workers Local 707 v. NLRB*, 793 F.2d 323 (D.C.Cir. 1986), is misplaced. We disagree. In *Production Workers*, the Board had found that a union's picketing of taxi companies on behalf of independent contractor drivers was a secondary boycott and was therefore prohibited by section 8(b)(4)(B). The Board reasoned that, even though the picketing was not directed toward a neutral employer, it was prohibited because section 8(b)(4)(B) is an "intentionally broad" provision whose protections do not extend to parties who are not statutory employees. *Production Workers Union of Chicago and Vicinity, Local 707*, 273 N.L.R.B. 1178, 1180–81 (1984). On appeal, the D.C. Circuit overturned the Board's decision, holding that the Board had applied the wrong standard, and remanded for application of the correct standard: "[S]ection [8(b)(4)] does not exclude union involvement in all picketing by independent contractors; rather, its proscription is limited to picketing against neutral parties." 793 F.2d at 332–33. On remand, the Board dismissed the cab companies' complaint, finding that they were not neutral parties. *Production Workers Union of Chicago and Vicinity, Local 707*, 283 N.L.R.B. No. 56 (March 26, 1987). On the same day, the Board, perceiving *Production Workers* to control this case as well, issued its decision against Chipman. *Brotherhood of Teamsters, Local 70*, 283 N.L.R.B. No. 57 (March 26, 1987). Without repeating here the D.C. Circuit's thoughtful analysis of section 8(b)(4)(B)'s legislative history and Supreme Court precedent, 793 F.2d at 328–31, we concur with its conclusion that the core distinction between primary and secondary activities is the neutrality of the entity against which the disputed activity is directed: "Section 8(b)(4) was designed to prohibit only pressure brought to bear on 'a third person who is wholly unconcerned

in the disagreement,' whether that pressure is called a 'secondary boycott' or 'secondary activity.'" *Id.* at 328 (citing 93 Cong.Rec. 4198 (1947) (remarks by Senator Taft on section 8(b)(4)). Chipman is clearly not a neutral third party, because agreements it attempted to impose upon the independent subhaulers are the sole object of the picketing.

Chipman's efforts to undermine *Production Workers* fail. It first attempts to distinguish the all but identical facts in *Production Workers* from those presented here: in the former, the union represented all of the independent contractors; but here, four of Chipman's subhaulers had agreed to do business under the new contract. This is a distinction without a difference: although Local 70 may not picket against the other subhaulers, neither does the NLRA require that the support a union obtains from those it represents be unanimous. *See, e.g., Precision Striping, Inc. v. NLRB.*, 642 F.2d 1144, 1147 (9th Cir. 1981) (union must obtain majority support).

Chipman then suggests that *Production Workers* was wrongly decided, citing an earlier case from that circuit in its support. In *Soft Drink Workers Local 812 v. NLRB*, 657 F.2d 1252 (D.C.Cir.1980), a union violated section 8(b)(4)(B) by picketing a distributor of nonlocal products to enhance the job opportunities of union members at local plants, *id.* at 1260; its picketing was thus "tactically calculated to satisfy union objectives elsewhere." *National Woodwork*, 386 U.S. at 644, 87 S.Ct. at 1268.

The *Soft Drink Workers* decision itself set forth two requirements for a finding of an unfair labor practice by a union: (1) the challenged conduct must have as an object forcing a neutral business to cease doing business with another; and (2) the union must pursue its object by threatening, coercing, or restraining the neutral business. 657 F.2d at 1261. Neither the action complained of in *Production Workers* nor that at issue here meets these criteria, and the decision in *Production Workers* is consistent with the precedent in that circuit.

For the reasons discussed above, the order of the National Labor Relations Board dismissing Chipman's complaint is

AFFIRMED.