| jBARRY, Judge.
This matter concerns jurisdiction of the National Labor Relations Board relating to strike pickets which allegedly disturbed an adjacent property. Plaintiffs appeal a judgment which maintains exceptions of lack of subject matter jurisdiction which dismissed their petition with prejudice.[1]
On July 9, 1993 Lucy and Leonard Kahn, individually and as owners of and on behalf of Foxe Lady, Inc., filed suit against National Tea Company, United Food and Commercial *763 Workers Local Union 210, Eddie Murphy, a Union picketer, and their insurers relating to a strike and picketing activities at a Canal Villere store located adjacent to Foxe Lady in a strip shopping center. The Kahns alleged jurisdiction under Louisiana tort law and 29 U.S.C. § 187 and argued that National and the Union had submitted to the jurisdiction of state court by bringing another proceeding in state district court. Plaintiffs alleged that Union picket lines blocked the common bridge walkway, sidewalks, and entrance to their store, and that their customers were harassed, threatened, frightened, and coerced not to enterJjFoxe Lady. Plaintiffs claimed that National and the Union painted a white line in the center of the Foxe Lady doorway; beyond the line picketing was allowed (to remove the picketers from National’s entrance). The Kahns also alleged that Murphy filed a false police report accusing Mr. Kahn of threatening him with a gun. The Kahns said the picket signs read “do not shop here;” hence, Foxe Lady’s customers were frightened away and the business suffered losses. Plaintiffs requested a temporary retraining order, which was denied, and an injunction (moot after the strike ended) and damages. Prior to this suit plaintiffs (with National’s attorney) filed a charge against the Union with the NLRB, but the complaint was refused.
The Union filed exceptions of no right or cause of action and lack of subject matter jurisdiction. It claimed Foxe Lady challenged the same conduct before the NLRB, which dismissed the charge and no appeal was taken; therefore, this lawsuit was preempted. The Union’s opposition to the preliminary injunction included documents from National Tea Company v. United Food and Commercial Workers Local No. 210, # 93-7792 “K”: the consent injunction;[2] motions for contempt and to modify the consent injunction; and judgments denying the motions. Also attached was correspondence from the Union’s counsel to plaintiffs’ counsel informing him that the Kahns had filed an unfair labor practice charge with the NLRB which had been dismissed on June 80, 1998. Attached to the letter was a copy of the NLRB’s Regional Director’s June 30, 1993 letter of notification which stated that an investigation had been conducted and no further proceedings Rwere warranted because the picketing involved was directed at the primary employer (Canal Villere), and there was no evidence that Union picketers attempted to coerce customers of the secondary employer (Foxe Lady) to cease doing business with Foxe Lady; that picketing was conducted in conformity with the consent injunction, with minor exceptions, outside the “white line” drawn by Canal Villere; and that a copy of the appeal procedure was enclosed.
National answered, filed exceptions of no cause of action and lack of subject matter jurisdiction, and cross claimed against the Union and Eddie Murphy. The Union and Eddie Murphy answered National’s cross claim and filed exceptions of lack of subject matter jurisdiction, no right or cause of action, and res judicata.
An amended petition was filed naming as plaintiffs: the estate of Leonard Kahn; Leonard Kahn’s daughter, Wendy Kahn; Lucy Kahn; and Foxe Lady. The petition alleged that Leonard Kahn became depressed as a result of defendants’ negligent actions which destroyed Foxe Lady’s business and caused his financial ruin, and he took his life on August 6, 1993. Plaintiffs also alleged that National and the Union agreed to relocate the picketers away from National’s entrance and in front of Foxe Lady’s doorway. They sought loss of profits, loss of good will, medical expenses, pain and suffering, loss of love and affection, and loss of consortium to Lucy Kahn.
The Union answered the amended petition, listed affirmative defenses, and cross claimed against National which filed exceptions. National answered the amended petition and *764 included exceptions of no cause of action and lack of subject matter jurisdiction.
|Jn 1996 the Union filed a motion to set a hearing on the exceptions and attached the affidavit of Rick Alleman, Business Agent of Local 210, who declared: that there had been a strike against all National stores in the New Orleans area from April 1993 to December 15, 1993; that picketing at the Canal Villere on Robert E. Lee Blvd. was peaceful and in compliance with the consent injunction; that Lucy Kahn complained that her business was disturbed; and that he had instructed the picketers to comply with the consent agreement and stay away from the Foxe Lady entrance. The Union also attached documents from case # 93-7792“K” and Lucy Kahn’s June 22, 1993 charge against the Union with the NLRB alleging harassment and abuse of her customers by pickets in front of her store.
On appeal plaintiffs focus on five issues:
1) whether their failure to appeal the NLRB ruling caused dismissal of this action;
2) whether the NLRB ruling was rescinded; [3]
3) whether appellees misrepresented material issues of fact to obtain the dismissal;
4) whether they are precluded from bringing this state action; and
5) whether they are estopped from asserting this defense.
The defendants contend that the claims are preempted because the NLRB has exclusive jurisdiction.

JbLAW AND ANALYSIS

The National Labor Relations Board has exclusive jurisdiction over claims arising from activity that is arguably protected or prohibited by the National Labor Relations Act, 29 U.S.C. § 151 et seq. Local 926, International Union of Operating Engineers, AFL-CIO v. Jones, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983); San Diego Building Trades Council, Millmen’s Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). 29 U.S.C. § 157 protects picketing. States have no jurisdiction to award damages for conduct protected by the NLRA even if the conduct would be tortious under state law. Garmon, 359 U.S. at 236, 79 S.Ct. at 773. See also Johnson v. Electronic Sales & Service, Co., Inc., 363 So.2d 716 (La.App.2d Cir.1978).
“Only in eases where violence requires the exercise of local police power to preserve the peace and order and to protect property and the public safety may state courts take jurisdiction in labor disputes.”[4] Coastal Cargo Company, Inc. v. General Longshore Workers Local Union No. 3000 International Longshoremen’s Association, 478 So.2d 169 (La.App. 4th Cir.1985), writ not considered, 479 So.2d 919 (La.1985). In such eases the legislature has set out perimeters of the court’s authority to grant injunc-tive relief. Id. See La. R.S. 23:844.
29 U.S.C. § 187 provides:
(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as unfair labor practice in section 158(b)(4) of this title.
(b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, 1 sand shall recover the damages by him sustained and the cost of the suit, (footnote omitted).
29 U.S.C. § 158 provides:
(b) It shall be an unfair labor practice for a labor organization or its agents:
*765 (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either ease an object thereof is:
(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;
(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;
29 U.S.C. § 158(b)(4) proscribes secondary activity, but allows primary activity even if that activity indirectly affects a secondary employer. Allied Concrete, Inc. v. NLRB, 607 F.2d 827 (9th Cir.1979).
|7Concurrent jurisdiction of federal and state courts exists when there is a suit against a labor organization for money damages arising from an illegal secondary boycott under 29 U.S.C. § 187. Douglas v. International Brotherhood of Electrical Workers Union, 136 F.Supp. 68 (W.D.Mich.1955), citing United Construction Workers v. Laburnum Construction Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954). When an action seeks an injunction relating to conduct allegedly constituting tortious interference with a company’s contractual relations, there is exclusive federal jurisdiction. However, as to monetary damages for a secondary boycott, 29 U.S.C. § 187 expressly grants state and federal district courts concurrent jurisdiction. Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers’ Union, ILGWU, AFL-CIO, Local 1-35, 10, 22, 48, 77, 89 and 189, 511 F.Supp. 1180 (S.D.N.Y.1981).
A third party can recover damages under 29 U.S.C. § 187 if he can establish á combination of the following: 1) an integrated business enterprise which includes a third party and either a primary or neutral employer; 2) direct injury to third party’s property; and 3) a principal-agent relationship between a third party and primary employer. To have a right of action under the section a plaintiff must be injured in their business or property’by reason of a secondary boycott. W.J. Milner and Co. of Florida v. International Brotherhood of Electric Workers, Local 349, 476 F.2d 8 (5th Cir.1973). See also Abreen Corporation v. Laborers’ International Union, N.A., AFL-CIO,. 709 F.2d 748 (1st Cir.1983), modified on denial of rehearing, 1983 WL 21381 (1983), cert. denied 464 U.S. 1040, 104 S.Ct. 702, 79 L.Ed.2d 167 (1984).
A secondary boycott exists when a labor organization induces or encourages employees of a neutral employer to refuse to handle goods or perform services for the neutral employer in order to cause the neutral employer to cease doing business [gwith the employer directly involved in the dispute. BE & K Construction Co. v. United Brotherhood of Carpenters and Joiners of America, AFL-CIO, 90 F.3d 1318 (8th Cir.1996); NLRB v. International Union of Operating Engineers, AFL-CIO, 326 F.2d 218 (3rd Cir.1964). A secondary boycott presupposes a labor dispute involving employees of a primary employer, with whom a secondary employer has a business relationship as a customer or source of materials; the strike of *766 employees of the secondary employer is threatened unless the secondary employer discontinues relations with the primary employer. Douds v. International Longshoremen’s Association Independent, 224 F.2d 455 (2d Cir.1955), cert. denied 350 U.S. 873, 76 S.Ct. 117, 100 L.Ed. 772 (1955). See also Limbach Company v. Sheet Metal Workers International Association, AFL-CIO, 949 F.2d 1241 (3rd Cir.1991)(on Rehearing).
There are two basic requirements for finding secondary activity: “(1) the challenged conduct must have as an object forcing a neutral business to cease doing business with another; and (2) the union must pursue its objeet by threatening, coercing, or restraining the neutral business.” Chipman Freight Services, Inc. v. National Labor Relations Board, 843 F.2d 1224, 1227 (9th Cir.1988), cert denied 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988). The distinction between primary activity which is allowed and secondary activity which is prohibited depends on the object of the picketing. If the object of the union’s conduct is to bring indirect pressure on the primary employer by involving the secondary employer in the dispute, the conduct is prohibited. John B. Cruz Construction Co., Inc. v. United Brotherhood of Carpenters and Joiners of America, Local 33, 907 F.2d 1228 (1st Cir.1990); Allied Concrete, 607 F.2d at 827.
|9When picketing is at a common site the analysis is difficult. Picketing is presumed primary if 1) the picketing is strictly limited to times when the primary employer is at the site; 2) the picketing is limited to times when the employer is engaged in work at the situs; 3) the picketing is limited to places reasonably close to the location of the employer; and 4) the picketing clearly identifies that the dispute is with the primary employer. The pivotal issue is the union’s intent. Abreen Corporation, 709 F.2d at 755, quoting Sailor’s Union of the Pacific, 92 NLRB 547 (1950)(Moore Dry Dock).
Plaintiffs’ petition does not allege that Union picketers were attempting to coerce Foxe Lady, the secondary employer, into terminating a business relationship with National. No business relationship existed between the stores. The Union’s intent could not be to coerce Foxe Lady employees to exert influence upon the secondary employer to stop supplying National with goods or materials. Although Foxe Lady customers may have been deterred from entering the store because of pickets, the pickets did not intend to compel Foxe Lady to discontinue a business relationship with National. At most, the primary picketing against National may have affected the secondary employer, Foxe Lady. If Union pickets carried signs declaring “do not shop here” and adversely affected Foxe Lady’s business, National would not be impacted. There was no business relationship between Foxe Lady (secondary employer) and National (primary employer); hence, there was no secondary boycott.
A state court has concurrent jurisdiction over claims involving picketing and other activities protected by the NLRA only if the action falls under 29 U.S.C. § 187 relating to secondary boycotts. State courts have no jurisdiction to award damages for conduct protected by the NLRA even if it is tortious under state law.
lioWe must conclude that the state district court has no jurisdiction in this matter. The judgment is affirmed.
AFFIRMED.

. Plaintiffs subsequently filed a petition for nullity. Plaintiffs' prior request for a stay pending trial on that petition was denied by this Court.

. The consent injunction (# 93-7792"K”) limited the number of picketers, declared that picketers in strip shopping centers can picket no closer than 15 feet, and provided that picketers move with deliberate speed not to unduly delay free passage of customers and employees in and out of the store. According to the trial court, the motion for contempt was denied (activity in violation of the consent injunction was videotaped because the violators could not be identified).

. Plaintiffs claim and defendants do not contest that the charge before the NLRB was rescinded. They attached to their brief the NLRB Director’s letter to the law firm representing the Union advising that the charge had been withdrawn with his approval and the June 30, 1993 dismissal was being rescinded. Therefore, plaintiffs contend that there was no ruling to appeal. That document is not part of the appellate record.

. Apparently the other CDC case # 93-7792''K" was such a case.